## Vito A. Rossi, Coadministrator (Estate of Gaetano T. Rossi) et al. *v.* William H. Stanback et al.
## (11297)

Lavery, Landau and Schaller, Js.

Submitted on briefs October 28—decision released December 13, 1994

*Kenneth John Laska* filed a brief for appellants (plaintiffs).

*Andrew J. O'Keefe* and *Michael J. Walsh* filed a brief for the appellees (defendants).

LANDAU, J. This matter is currently before us on remand from our Supreme Court. *Rossi* v. *Stanback,* 230 Conn. 175, 644 A.2d 352 (1994).[1] On appeal from a judgment rendered on a jury verdict in favor of the defendants, William H. Stanback and Savin Brothers, Inc. (Savin), in a cause of action sounding in negligence, the plaintiffs claim that the trial court improperly (1) charged the jury on the applicable standard of care, (2) instructed the jury that it could not consider certain evidence in its deliberations, and (3) recharged the jury regarding proper lookout and due care.

The following facts, set out in *Rossi* v. *Stanback,* 31 Conn. App. 703, 626 A.2d 829 (1993), are pertinent to the resolution of this appeal. "On July 20, 1987, the defendant William H. Stanback was employed as a truck driver for the defendant Savin Brothers, Inc., a construction firm under contract with the state of Connecticut to widen Interstate 91 in Hartford. The dece-

[1] In *Rossi* v. *Stanback,* 31 Conn. App. 703, 626 A.2d 829 (1993), we reversed the judgment of the trial court and remanded the case for a new trial. The plaintiffs had asserted four claims on appeal, the first of which was that the trial court improperly refused to submit separate plaintiffs' verdict forms for each count of the complaint. Because we agreed with the plaintiffs' first claim, we did not address the remaining three. Id., 704. The Supreme Court granted certification; *Rossi* v. *Stanback,* 227 Conn. 912, 632 A.2d 695 (1993); reversed our judgment and remanded the case for our consideration of the plaintiffs' remaining claims. *Rossi* v. *Stanback,* supra, 230 Conn. 181.

dent [Gaetano T. Rossi] was employed as an inspector by C. E. McGuire. As part of the construction process, Savin transported loads of fill to the construction site. Rossi's duties were to inspect the loads of fill dumped on the site and to calculate the cubic yardage of fill deposited. John Santos was employed by Savin as a 'dump man.' As a dump man, Santos directed the truck drivers on the jobsite, among them Stanback, as they were backing up to dump the loads of fill. The direction was necessary because the truck drivers could not see directly behind their trucks as they were backing up. After the drivers had backed into the position as directed by the dump man, they would raise the truck bodies, drop the fill, and pull forward with the truck bodies raised to allow all the fill to fall from the trucks. The truck drivers would then stop, lower the truck bodies, and latch the tailgates. These maneuvers were directed by hand signals from the dump man to the truck drivers. A blast of a truck horn was a danger signal used by the drivers. Whenever a horn sounded, all truckers were to stop immediately.

"On the day of the accident, Stanback drove onto the dumpsite, made a U-turn, stopped and waited for a signal from Santos. While Stanback got into position, Santos was directing another driver, Willie McDuffie, through his dumping routine. While Stanback was waiting and McDuffie was pulling forward to finish his dump, Rossi walked toward Santos. When Santos finished with McDuffie and turned toward Stanback, he saw that Stanback had begun to back up and was heading directly at Rossi. Santos immediately yelled to both Rossi and Stanback, but neither heard him because of the noise on the site. Santos then ran to McDuffie's truck and told him to sound his horn, which McDuffie did twice. Stanback did not heed the first warning. Rossi, however, heard the first blast and turned toward Stanback's truck. As he turned, Stanback's truck

knocked him over and dragged him under the driver's side rear wheels. Stanback continued to back up. Stanback heard the second blast and stopped backing up. Santos ran to Stanback's truck and told him what had happened. Rossi, meanwhile, was caught between the first two sets of tires. Santos told Stanback to pull forward over Rossi so as to render medical attention. Stanback, however, backed up and over Rossi again. Shortly thereafter, Rossi died." Id., 704–705.

## I

The plaintiffs first claim that the trial court improperly charged the jury as to the applicable standard of care. Specifically, the plaintiffs contend that the trial court refused to instruct the jury in accordance with two of their requests to charge, the combined gist of which was that the degree of care required increases as the risk of harm increases.[2] The result of the court's

---

[2] The pertinent requests to charge stated:

"9. 'As the risk of harm becomes more foreseeable, the duty to foresee that risk increases and the right to assume due care correspondingly decreases.' In this instance you must determine whether or not it was foreseeable for the Defendant, William Stanback and the Defendant, Savin Brothers, to anticipate individuals or objects behind the dump trucks. In this light, you must consider the standard of care that the Defendants were operating under. That is to say that they testified that a dump truck would not be backed up without the aid of a dump man who at all times stood in the driver's mirror. If you determine that the risk of an individual being run over by a dump trunk without the aid of a dump man becomes more foreseeable, then the duty to foresee that risk on the part of the truck driver increases and furthermore, the truck driver's right to assume due care on the part of any individuals in that area correspondingly decreases. Again, where a danger may extend to taking life, reasonable care is very great care.

"10. There has been testimony that the Defendants knew that there was a blind spot behind these trucks. The Defendants testified that they took certain steps to protect individuals who may have been caught in these blind spots behind the trucks. Namely they placed rear view mirrors on the trucks. Furthermore, they placed audible back up signals on the trucks and in addition to that they also had a requirement that the trucks would not back up without the proper signal from the dump man who at all times was to stand in the driver's rear view mirror. The Defendants are required to know the common qualities and habits of human beings, insofar as they are a

failure to so charge, the plaintiffs assert, is that the jury was misled to believe that reasonable care in this case was "simple care" rather than "very great care." We disagree.

In reviewing the plaintiffs' claim, we must determine whether the jury instructions "gave the jury a reasonably clear comprehension of the issues presented for their determination under the pleadings and upon the evidence and were suited to guide the jury in the determination of those issues. . . . [I]n our task of reviewing jury instructions, we view the instructions as part of the whole trial. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Citations omitted; internal quotation marks omitted.) *Blanchette* v. *Barrett,* 229 Conn. 256, 281, 640 A.2d 74 (1994). Moreover, "[a] refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Gant,* 231 Conn. 43, 47, 646 A.2d 835 (1994).

Here, while the trial court refused to use the exact words of the plaintiffs' request, it properly instructed the jury that the degree of care required varies with the specific circumstances of a case. Specifically, the court charged that "in circumstances of great danger,

matter of common knowledge in the community. The Defendants may have special knowledge of the qualities and habits of the Plaintiff over and above the minimum that they are required to know or the Defendants may have had special warning that the Plaintiff was negligent or reckless in this particular case. Even without such special knowledge, the Defendants are required to know that there is a certain amount of negligence in the world and that some human beings will fail on occasion to behave as reasonable men would behave. When the possibility of such negligence involves an unreasonable risk of harm, to either a person or an object behind the truck in its blind spot, the Defendants, as reasonable men are required to take that into account and govern their conduct accordingly."

a correspondingly greater amount of care would be required to constitute reasonable care." The court also instructed that "[r]easonable care is care proportioned to the danger existing in the surrounding circumstances." The plaintiffs, in their exception, stated that the trial court did not instruct the jury that the right to assume due care correspondingly decreases as the risk of harm becomes more foreseeable. The court, however, made it clear that the degree of care required, a concept that embraces both the duty to foresee risk of harm and the right to assume due care by others, is dependent on the circumstances of the case.

A consideration of the court's instructions as to this issue, in conjunction with the entirety of the court's charge, reveals that the trial court properly instructed the jury on the standard of care required of the defendants.

## II

The plaintiffs next claim that the trial court improperly charged the jury that, even if it found the actions of Santos to be inappropriate, it could neither use that determination as a basis for finding Savin negligent, nor impute Santos' actions to Savin.[3] The plaintiffs contend that they established Santos' negligence, as well as the fact that he was an employee of Savin. Consequently, the jury should have been allowed to impute Santos' negligence to Savin. The plaintiffs assert that the trial court's charge prevented the jury from finding liability on the part of Savin based on Santos' negligence and, therefore, was incorrect as a matter of law.[4] We are unpersuaded.

---

[3] This claim goes to the second count of the plaintiffs' complaint, which was directed against the defendant Savin only.

[4] The trial court charged the jury as follows: "Now with regard to the complaint, the plaintiffs' right to recover is limited to the allegations contained in the complaint. This is necessary to maintain a regularity of procedure and to make for just decisions. As a fundamental corollary to this

We are again guided by the settled rule that "[a]s 'long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury'; *Kelley* v. *Bonney,* 221 Conn. 549, 584, 606 A.2d 693 (1992); we will not view the instructions as improper." *Blanchette* v. *Barrett,* supra, 229 Conn. 281.

" 'It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of [the] complaint.' " *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank,* 230 Conn. 486, 496, 646 A.2d 1289 (1994), quoting *Lundberg* v. *Kovacs,* 172 Conn. 229, 232, 374 A.2d 201 (1977). Count two of the plaintiffs' complaint alleges that Savin carelessly, recklessly and negligently caused the death of the decedent through its failure to train, advise, or warn its employees, or to provide for an adequate number of employees on the work site. Count two alleges no breach of duty by Santos as a basis for the plaintiffs' claim against Savin. Rather, it is exclusively limited to the allegedly negligent actions of Savin.

The plaintiffs specifically assert that paragraph 6 (e) of count two permits the jury to impute the negligence of Santos to Savin.[5] A plain reading of that paragraph

rule, the plaintiffs may not recover for something that is not alleged in the complaint. In other words, the plaintiffs are limited to the allegations of the complaint. Now with regard to the testimony of John Santos and regarding his actions, he has at times been referred to as the dump man. Based on this evidence, you may reach various conclusions relative to the actions of Mr. Santos. However, at no time in the complaint have the plaintiffs alleged any breach of duty by Mr. Santos as a basis for their actions against the defendant, Savin Brothers. Accordingly, I instruct you as a matter of law that even if you find that the actions of Mr. Santos were in some ways inappropriate, you may not use that determination as a basis to find against either defendant in this case. The actions of Mr. Santos may not be imputed to the defendants in this case."

[5] Paragraph 6 (e) alleges that Savin is liable "in that, it did not adequately instruct its employees including its truck drivers in the recognition and avoidance of unsafe conditions and the regulations applicable to their work environment to control or eliminate any hazards or other exposure to injury insofar as it related to the backing up of its trucks in violation of OSHA Regulation 29 CFR [§] 1926.21."

reveals that it alleges nothing more than the inadequate instruction of its employees by Savin. A jury finding of negligence on the part of Santos would not support a claim against Savin under paragraph 6 (e). The trial court was correct in instructing the jury that any inappropriate action by Santos could not be used as a basis for finding Savin liable.

## III

The plaintiffs' final claim is that the trial court improperly recharged the jury regarding the duty of Stanback, the driver of the truck, to keep a proper lookout. It is unnecessary for us to review this issue, however, because it has not been properly preserved.

Practice Book § 315[6] "provides that this court is not bound to review claims of error in jury instructions if the party raising the claim did not either submit to the trial court a written request to charge or promptly except to the charge after it was delivered. . . . The purpose of the rule is to alert the court to claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." (Internal quotation marks omitted.) *Berry* v. *Loiseau,* 223 Conn. 786, 814, 614 A.2d 414 (1992).

Here, the defendants had requested a jury charge concerning proper lookout and the degree of care required of the driver of the truck. After the trial court failed to give the charge, the defendants took an exception, in response to which the court gave a supplemental

---

[6] Practice Book § 315 provides: "The supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury."

charge regarding proper lookout. The plaintiffs, who now claim that the trial court acted improperly, did not take an exception to the recharge. Consequently, they have failed to preserve this issue for appellate review. See *Begley* v. *Kohl & Madden Printing Ink Co.,* 157 Conn. 445, 254 A.2d 907 (1969); *Terrazzano* v. *Sporna,* 157 Conn. 39, 244 A.2d 599 (1968).

The judgment is affirmed.

In this opinion the other judges concurred.