[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR ACCEPTANCE OF REPORT JUDGMENT NO. 114.01 EXCEPTIONS TO ATR REPORT NO. 119 OBJECTIONS TO ACCEPTANCE OF ATR REPORT NOS. 120, 121
By complaint, dated October 18, 1990, the plaintiff, Michael Kallas (Kallas), commenced this action against the defendant, Charles Harnen (Harnen), for the alleged breach of a contract for the sale of real estate, seeking the return of moneys allegedly paid to the defendant under the contract.
On December 2, 1992, the matter was assigned to Attorney Trial Referee (ATR) Sharon Wicks Dornfeld. On January 13, 1993, a hearing was held before the ATR, and on July 2, 1993, the ATR released her memorandum of decision in the case. In her memorandum, the following facts were found. CT Page 4186-WW
In March, 1986, Harnen entered into a contract with Cordalie Benoit (Benoit), Trustee for Kallas, to sell a condominium unit at Barclay Commons in Danbury, Connecticut. (Plaintiff's Exhibit A: Contract.) The contract called for a down payment of $7,450 to be held in escrow by Harnen's attorney. (Contract, ¶ 4a.) The closing was to be held on June 15, 1986; however, the contract provided that if the closing did not occur within one year of the scheduled date — that is, by June 15, 1987 — "all moneys shall be returned to Buyer." (Contract, ¶ 5.) Although the contract called for all modifications to be in writing, no such modifications were ever made.
At the hearing before the ATR, Benoit testified that subsequent to the execution of the contract, Roderick J. MacKenzie, Esq., Harnen's attorney, requested additional payments from Kallas, through Benoit. Benoit executed three checks made payable to "Attorney Roderick J. MacKenzie, Jr., Trustee," and "Roderick J. MacKenzie, Jr., Trustee," totalling $17,000. (Exhibit C: check for $5951; Exhibit E: check for $4049; Exhibit H: check for $7000.) It is undisputed that title to the property never closed because the condominium unit was never completed. On August 29, 1990, Kallas made his first demand for the return of the funds in accordance with the terms of the contract. This suit followed.
The ATR found that Kallas had proven tender of the down payment in accordance with the contract, and determined that Kallas was entitled to the return of $7450, the amount of the down payment called for in paragraph 4a under the contract. However, the ATR also found that Kallas, in his complaint, had alleged only a single claim for breach of contract, and had not alleged any modification of the contract or any new agreement. Thus, she determined that proof as to any subsequent agreement between the parties was outside the scope of the pleadings. Additionally, the ATR noted that the contract itself required any modifications to be in writing. (Contract, ¶ 23.) Accordingly, she found that there was no basis for finding Harnen liable for any amounts paid by Kallas in excess of the $7450 down payment.
Harnen's position at the hearing was that he had never received the moneys paid by Benoit to MacKenzie and, thus, he was not liable to Kallas for the return of the $7450. The ATR rejected this position, finding that MacKenzie acted as Harnen's agent for the contemplated sale, and that, in any event, Harnen CT Page 4186-XX had ratified MacKenzie's actions by signing the contract. Thus, the ATR ruled that Harnen was directly liable to Kallas even though he may not have ever received the funds.
After the hearing, Kallas filed a motion to submit rebuttal testimony to contradict Harnen's testimony that he had never received the funds from MacKenzie. The ATR issued a memorandum of decision on July 2, 1993 denying the motion. On July 22, 1993, Harnen filed a motion to correct the report of the ATR in ten specific areas. The majority of Harnen's proposed corrections sought clarification of the ATR's findings with respect to whose agent MacKenzie was acting as when he held Kallas' down payment in escrow.
On July 28, 1993, Kallas filed a motion to correct the ATR's findings. Among other things, Kallas sought to have the ATR make findings that: (1) the additional funds paid by Benoit to MacKenzie and the accompanying correspondence between the two attorneys constituted a modification of the parties' contract; (2) oral modifications to the contract were permitted notwithstanding the express contract language to the contrary; and (3) that Kallas was entitled to attorney's fees in accordance with paragraph 17b of the contract. Additionally, Kallas argued that the ATR's report should be "corrected" by admitting evidence as to Kallas' reasons for making payments over and above the down payment, as well as Kallas' assertions that an oral modification had occurred.
On February 2, 1994, the ATR filed her response to the motions to correct, making three minor corrections and declining to otherwise change her initial report. The additional findings made by the ATR included the finding that Harnen's attorney acted as an escrow agent for the benefit of both Kallas and Harnen when he held the down payment funds. (See ATR's Response to Motions to Correct, ¶ 20.)
On February 14, 1994, Harnen filed exceptions to the report of the ATR, as corrected, arguing that the ATR's finding regarding MacKenzie's agency was improper. Harnen maintained that "[s]ince an escrow agent is the agent of the party who would be entitled to performance at any given moment, and since the beneficiary of the agent's loyalties changes with the occurrence of the escrow condition, it is important to make findings with respect to who that principal was. This, the Trial Referee declined to do, saying that the identity of the principal is CT Page 4186-YY irrelevant." (Defendant's Exceptions, pp. 2-3.)
Harnen also argued that the ATR's refusal to make a specific finding as to MacKenzie's authority "in each instance" was error. Harnen argues that the ATR's finding that MacKenzie had apparent authority to act on his behalf is inconsistent with the language of the contract which contains "express limitations on [MacKenzie's] authority." (Defendant's Exceptions, p. 3.) Finally, Harnen argues that the ATR's report should have been corrected to reflect that the contract "required moneys to be returned to the Buyer only at the Buyer's option." (Defendant's Exceptions, p. 4.)
On February 15, 1994, Kallas filed an objection to the acceptance of the ATR's report. He argues that the ATR's refusal to allow him to introduce evidence of an oral modification of the contract was error, since his complaint alleged payments of $18,494 to MacKenzie.[1] Additionally, Kallas argues that the ATR's failure to award him attorney's fees was erroneous, since paragraph 17b of the contract provided for recovery of attorney's fees.
On February 16, 1994, Harnen filed an objection to the acceptance of the ATR's report, reiterating the arguments set forth in his exceptions to the ATR's findings. Significantly, neither party cited any case law or other authority in their motions to correct and objections to acceptance of the ATR's report.
"As to this court's scope of review of an attorney trial referee's recommendations regarding the facts of a given case, the Supreme Court has stated that: (1) the trial court may not `retry the case'; and (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, `a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear.' Dills v. Enfield,210 Conn. 705, 714, 557 A.2d 517 (1989). Furthermore, a trial court may not engage in `fact-finding contrary to the report of the referee.' Id., 716[.] According to Bernard v. Gershman, 18 Conn. App. 652,656, 559 A.2d 1171 (1989), this court's task is to determine whether the conclusions of fact and law by the referee `are legally and logically correct and whether they find support in the facts found by the referee.' See also Practice Book § CT Page 4186-ZZ 440." (Alterations in original.) Roper v. Richland, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 078807 (February 2, 1995, Lewis, J.).
A. The Defendant's Exceptions to the ATR's Report
Practice Book § 439 provides, in part: "If a . . . [trial referee] fails to correct a report or finding in compliance with a motion to correct, the moving party may, within ten days after the decision on the motion to correct, file exceptions seeking corrections by the court in the report or finding." Practice Book § 439.
The ATR ruled on Harnen's motion to correct on February 2, 1994; thus, exceptions should have been filed by February 12, 1994. However, February 12, 1994 fell on a Saturday. Thus, Harnen argues that he had until the next business day, February 14, 1994, to file his exceptions.
Practice Book § 405 provides, in part: "If the last day for filing any matter in the clerk's office falls on a day when such office is not open . . . then the last day for filing shall be the next business day upon which such office is open." Additionally, General Statutes § 51-347c provides: "If the last day for filing of any matter in the clerk's office of the superior court falls on a day on which such office is closed, the last day for such filing shall be the next business day." Thus, even though Harnen filed his exceptions to the ATR's report two days late, the court is not barred from addressing them. Since Harnen's exceptions are essentially the same as his objections to the acceptance of the ATR's report, they are addressed below.
B. The Objections to the Acceptance of the ATR's Report
1. Harnen's Objections
(a) Finding that MacKenzie was an agent for both parties.
Harnen argues that the ATR erred by finding that MacKenzie acted as an agent for both parties when he held the $7,450 down payment in escrow. He argues that MacKenzie was only the agent for "the party who would be entitled to performance at any given moment," and concludes that the ATR should have determined who MacKenzie acted for at each step of the transaction. This argument is unpersuasive. CT Page 4186-AAA
First, an escrow agent is a fiduciary and, as such, is charged with strict compliance of the escrow agreement. Malloy v.Short, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 331454 (May 9, 1991, Satter, J.). In that capacity, an escrow agent does in fact act as an agent for both parties, since each party has rights and duties under the contract with respect to the down payment, depending upon the outcome of the sale.
Second, even if the court were to accept Harnen's argument that MacKenzie's agency should have been determined at each step of the transaction, the outcome would not be any different. The contract in this case provided that if the parties failed to close by June 15, 1987, the money "shall be returned to Buyer." Thus, when the closing failed to occur, MacKenzie, as escrow agent, pursuant to the terms of the parties' contract, was clearly bound to return the down payment to Kallas. Thus the ATR's finding that MacKenzie was the escrow agent for both parties was not error, since the ATR specifically found that Kallas was entitled to a return of the down payment under the terms of the contract.
(b) Moneys to be returned at buyer's option only.
Harnen argues that the ATR's report should be corrected to reflect that the buyer was entitled to the return of the down payment only "at the buyer's option." He contends that the date of Kallas' exercise of this option is important because it is determinative of when interest began to accrue.
The ATR declined to correct her report to comply with Harnen's request, noting "See Plaintiff's Exhibit A, contract[,] paragraph 5." There was no need for the ATR to correct her report since the contract speaks for itself. Paragraph 5 of the contract provides, in part: "At Buyer's option, if closing does not occur prior to June 15, 1987, all moneys paid shall be returned to Buyer." Thus the ATR did not err in declining to correct her report to reflect the requested changes.
As to Harnen's argument regarding interest accrual, the ATR found that Kallas' first demand for the return of the down payment was made on August 29, 1990. (ATR's report, ¶ 18.) Thus, that is the date on which interest began to accrue.American Surety Co. v. Pacific Surety Co., 81 Conn. 252, 259, CT Page 4186-BBB 70 A.2d 584 (1908). ("The interest which may thus be recovered is . . . limited to interest from the time of breach, this being the date when the debt is said to accrue.") (Citation omitted.)
Accordingly, Harnen's objections to the acceptance of the ATR's report are overruled.
2. Kallas' Objections
(a) Attorney's fees.
It is well-settled that "a party cannot recover attorneys' fees in the absence of statutory authority or a contractual provision." Doe v. State, 216 Conn. 85, 106, 579 A.2d 37 (1990). Moreover: "It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of . . . [the] complaint." (Alterations in original; internal quotation marks omitted.) Rossi v. Stanback, 36 Conn. App. 328, 650 A.2d 920
(1994), rev'd on other grounds, 230 Conn. 175, 644 A.2d 352
(1994), quoting Normand Josef Enterprises, Inc. v. ConnecticutNational Bank, 230 Conn. 486, 496, 646 A.2d 1289 (1994).
In his complaint, Kallas alleged a breach of contract, and sought solely monetary damages in his prayer for relief. Since Kallas' relief is limited to the allegations of his complaint, and since he did not request attorney's fees, nor did he seek to amend his complaint, the ATR did not err by refusing to award him attorney's fees.[2]
(b) Evidence of oral modification.
Kallas argues that the ATR erred by refusing to allow him to introduce evidence of an oral modification of the contract. His position is without merit. Although it is true, as the ATR noted, that the contract required all modifications to be in writing, that does not end the inquiry, for "despite the presence of such a clause in a contract, a modification by subsequent parol agreement will be given effect." McKenna v. Woods, 21 Conn. App. 528,533, 574 A.2d 836 (1990).
Rather, the reason Kallas was barred from introducing evidence of the alleged oral modification of the contract was that he failed to allege a modification of the contract in his complaint and at no time sought to amend the complaint to add such an allegation. "Since oral modification or waiver is not CT Page 4186-CCC alleged in the complaint, the issue cannot be tried during the trial. Therefore, the evidence offered by . . . [Kallas] did not tend to prove a material fact in issue or shed some light upon some material inquiry. . . ." (Citations omitted; internal quotation marks omitted.) Rosick v. Equipment Maintenance Service, Inc., 33 Conn. App. 25, 32, 632 A.2d 1134 (1993).
Significantly, the ATR also found that: "Even if subsequent agreements or modifications had been properly alleged . . . [Kallas] failed to offer sufficient proof of their existence. . . . Further, there was no proof that even oral agreements regarding the purpose for the payment of the additional money were reached. There was simply no evidence of mutual assent as to the purpose of or terms governing the payment of the additional funds. In particular, there is no clear proof that the additional payments were to be treated as part of the deposit. Relief cannot be founded on the contractual claims forming the complaint." (ATR's Report, p. 7.) Thus, even though Kallas did not allege an oral modification in the complaint, it appears that the ATR considered his claims on that issue, yet found his proof to be insufficient. This court, on review, cannot overturn such a finding. Roper v. Richland, supra.
Accordingly, the ATR did not err by finding that no oral modification of the contract existed.
In light of the applicable standard of review, the court overrules the defendant's exceptions to the ATR's findings, as well as all the objections of the parties to the acceptance of the ATR's report. Further, the court accepts the report of the ATR and enters judgment thereon.
Stodolink, J.