RAVENSWOOD CONSTRUCTION, LLC *v.*
F. L. MERRITT, INC.
(AC 26918)

Flynn, C. J., and Bishop and Borden, Js.

Argued September 6—officially released December 18, 2007

*Paul M. Geraghty*, with whom were *Michael S. Bonnano* and *James M. Miele*, for the appellant (named plaintiff).

*Elizabeth L. Leamon*, with whom were *Gerald A. Cory* and, on the brief, *Ben A. Solnit*, for the appellee (intervening defendant Groton Open Space Association, Inc.).

*Opinion*

FLYNN, C. J. The named plaintiff, Ravenswood Construction, LLC (Ravenswood), appeals from the judgment of the trial court in favor of the defendants, F. L. Merritt, Inc. (Merritt), and the Groton Open Space Association, Inc. (association).[1] On appeal, Ravenswood claims that the court improperly (1) failed to instruct the jury on the law of secret intent (2) allowed into evidence an unsigned rider to the real estate contract at issue, (3) restricted its cross-examination of a witness and (4) denied its motion to set aside the verdict where (a) the verdict was against the weight of the evidence and (b) the jury failed to follow the court's instructions. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 2002, Ravenswood and Merritt were negotiating a contract for the purchase and sale of seventy-five acres of undeveloped land in Groton; the land was

---

[1] The original complaint was brought only against Merritt. The association filed a motion to be made a party defendant, which was granted by the trial court.

owned by Merritt, and Ravenswood sought to purchase it for development. Negotiations between Merritt and Ravenswood began in the spring of 2002. Merritt was eager to sell the property because many of its shareholders were quite elderly, being in their eighties and nineties. Nelson Merritt, president of Merritt, who was age eighty-two, made it clear to Ravenswood that the property would be sold to the first buyer that was willing and able to purchase it. On January 13, 2003, Dean Fiske, a member of Ravenswood, signed a written offer to purchase and authorized his attorney, James Miele, to send this offer to Merritt's attorney, Robert Lane. There were exhibits affixed to this offer as well as a rider, which Fiske did not sign, but to which he had no objection. After acquiring the required nonrefundable deposit of $50,000 from Fiske, Miele sent the documents and the check to Lane on February 18, 2003.

After Lane received the documents, Nelson Merritt signed the agreement on February 28, 2003, but he instructed Lane to hold the documents in escrow pending receipt of certain releases from Miele. Nelson Merritt did not sign the rider, but, like Fiske, he also had no objection to it. As of March 14, 2003, Lane still had not received properly executed releases from Ravenswood, and he continued to hold the documents in escrow. Three days later, Lane informed Miele that Merritt was considering an offer from another potential purchaser. On March 31, 2003, Miele received a letter from Lane, which contained the documents, with Nelson Merritt's signature cut from the agreement and a check for the return of the $50,000 deposit. On April 14, 2003, Merritt executed a contract with the association for purchase of the seventy-five acres. On May 5, 2003, Ravenswood filed this action against Merritt for breach of contract, seeking specific performance of the agreement. The association's motion to intervene in this suit as a party defendant was granted on September

29, 2003, and the case was tried to the jury only on the question of whether there existed a contract between Ravenswood and Merritt. The jury returned a verdict in favor of the defendants, finding that no contract existed. The court accepted the jury's verdict, rendered judgment for the defendants and ordered that the property be conveyed to the association.[2] Ravenswood filed a motion to set aside the jury verdict, which the court denied on August 18, 2005. This appeal followed. Additional facts will be set forth as necessary.

I

Ravenswood first claims that the court improperly failed to give a requested instruction to the jury on the law of secret intent. The defendants argue that "[b]ecause the charge to the jury adequately and accurately reflected the controlling law, the judge's refusal to instruct the jury on the so-called 'law of secret intent' was not improper." We agree with the defendants.

"We first set forth the well established standard of review for a challenge to the propriety of a jury instruction. . . . The test to determine if a jury charge is proper is whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *Shea* v. *Doherty*, 91 Conn. App. 367, 371, 880 A.2d 1017 (2005). "[W]e must determine whether the jury instructions gave the jury a reasonably clear comprehension of the issues presented for their determination under the pleadings and upon the evidence and were suited to guide the jury in the determination of those issues. . . . [I]n our task of reviewing jury instructions, we view the instructions as part of the whole trial. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for

---

[2] There is nothing in the record before us that indicates whether this transfer has occurred.

the guidance of the jury . . . we will not view the instructions as improper. . . . Moreover, [a] refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance. . . ." (Citation omitted; internal quotation marks omitted.) *Rossi* v. *Stanback*, 36 Conn. App. 328, 332, 650 A.2d 920 (1994).

Ravenswood submitted the following requested instruction, which it claims the court improperly failed to give to the jury: "The making of a contract does not depend upon the secret intention of a party but upon the intention manifested by his, her or its words or acts, and on these words or acts the other party has a right to proceed." Although Ravenswood claims that the court acted improperly in not giving this exact instruction, our law requires that the court give instructions that are correct in law, adapted to the issues and sufficient to guide the jury in its deliberations. See id.

The law regarding secret intent is set forth by Professor Williston in his learned treatise: "It is customarily said that mutual assent is essential to the formation of informal contracts, but it must be noted that the mutual assent must be manifested by one party to the other, and except as so manifested, is unimportant. In some branches of the law, most notably in the criminal law, a person's subjective or secret intent is important. In the formation of contracts, however, it was long ago settled that secret, subjective intent is immaterial, so that mutual assent is to be judged only by overt acts and words rather than by the hidden, subjective or secret intention of the parties." 1 S. Williston, Contracts (4th Ed. Lord 2007) § 4.1, pp. 322–25.

In this case, the court instructed in relevant part: "The acceptance of the offer need not be expressed, but may be shown by any words or acts which indicate the offeree's assent to the proposed bargain." The court

further instructed: "In determining the intent of the parties, a contract is construed as a whole, and all relevant provisions are considered . . . . In construing the agreement, the decisive question is to be determined from the language used, the circumstances, the motives of the parties and the purposes which they sought to accomplish. . . . It is for you, the jury, to determine what was the intention of the parties in this case. . . . [I]t's for you to determine whether [Merritt] accepted the offer made by [Ravenswood], and your determination must be based on all the testimony you heard and the exhibits which were introduced into evidence as to what was the intent of the parties as to acceptance of the offer by [Merritt]."

Ravenswood argues that this instruction was not sufficient because "the evidence clearly supported the notion that . . . [Merritt] act[ed] and conduct[ed] itself in a manner that would allow [Ravenswood] to proceed under the contract" but that Merritt also "held the secret intent of not wanting to be bound by the contract even though it had been fully executed." Ravenswood contends that the court needed "to direct the jury that Connecticut law will not allow a party to a contract to rely on his or her secret intent but will instead rely on words or acts."

Although the court did not use the words "secret intent," it did instruct the jury that "[t]he acceptance of the offer need not be expressed but may be shown by any words or acts . . . ." This adequately conveyed the premise of the instruction that Ravenswood sought—that the existence of a contract is dependent on the intention manifested through the parties' words or acts. Any further instruction regarding some alleged "secret intent," which is not relevant in assessing the existence of a contract, may have confused the jury and would not have aided it in understanding the law. This is especially true in a case such as this, in which,

as the court stated, there was no evidence of a hidden or secret intent to warrant such a review. Accordingly, we conclude that the court properly declined to give the requested instruction.

## II

Next, Ravenswood claims that the court improperly denied its motion in limine to preclude an unsigned rider from being entered into evidence. It argues that the court "should have ruled that the parol evidence rule kept the rider out of evidence and rendered it without effect." We do not agree.

Initially, we set forth our standard of review. "Ordinarily, the trial court may exercise its discretion with regard to evidentiary rulings, and [those] rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Because the parol evidence rule is not an exclusionary rule of evidence, however, but a rule of substantive contract law . . . the [defendants'] claim involves a question of law to which we afford plenary review." (Internal quotation marks omitted.) *Landry* v. *Spitz*, 102 Conn. App. 34, 57, 925 A.2d 334 (2007).

The parol evidence rule "is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversation, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme. . . . The parol evidence rule does not of itself, therefore, forbid the presentation of

parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract." (Internal quotation marks omitted.) *Palozie* v. *Palozie*, 283 Conn. 538, 548 n.8, 927 A.2d 903 (2007).

Ravenswood filed a motion in limine, specifically requesting that the court preclude the rider that was appended to the contract proposal because "[t]he resulting prejudice against [Ravenswood] if the [r]ider is allowed into evidence calls for the preclusion of the [r]ider under the parol evidence rule." Ravenswood argued that the contract was fully integrated and that the rider was an unsigned document that improperly altered the terms of the fully integrated contract. In response, Merritt argued that both parties had agreed to the rider and that Miele, Ravenswood's attorney, had sent a facsimile to Lane, Merritt's attorney, on December 16, 2002, stating that "the rider is acceptable to my client." Additionally, Merritt argued that neither party had ever objected to the rider and that, as explained by Lane during his sworn testimony, it is common practice for parties not to sign riders that are appended to contract proposals. Further, Merritt argued, Ravenswood proceeded as though the rider was part of the contract proposal by recording the contract proposal with the rider attached, with a notice of lis pendens, on the Groton land records in April, 2003. Merritt also pointed out that Ravenswood had alleged in its original complaint that a written contract existed between Merritt and Ravenswood, a copy of which it attached as exhibit A to its complaint; exhibit A contained the contract proposal, the rider and other attachments. The association also opposed Ravenswood's motion, arguing that the rider was relevant to the case and, therefore, admissible.

The association further argued: "[Ravenswood's] attempt to preclude evidence of the rider assumes there was in fact a contract between the parties. This is the very issue that is yet to be decided by the jury in this case, and which can only be decided after all of the evidence concerning the negotiations of the parties is presented and heard. The rider in the instant matter was an integral part of the negotiations of the parties, was agreed to by both parties, and was attached to [Ravenswood's] original complaint in this matter. It is clearly admissible as part of the parties' negotiations and to establish that no final agreement was reached by the parties." The court, without filing a memorandum of decision, denied Ravenswood's motion in limine to preclude the rider from evidence.

On appeal, Ravenswood claims that the court improperly denied its motion to preclude the rider from evidence in violation of the parol evidence rule. It argues that the contract in this case was integrated fully and contained a clear provision in paragraph sixteen, which stated: "No modification of this [a]greement nor waiver of any term or condition hereof, shall be of any force or effect, unless the same is in writing, signed by the parties." Accordingly, Ravenswood argues, the rider was a modification to this agreement, which was unsigned by the parties and, therefore, should have been precluded from evidence.

In response, the defendants argue that the rider was not used to modify or to alter any terms of the proposed agreement but was part of the proposed contract that set forth the mechanism for acceptance and delivery, which terms were absent from the main proposal. They argue that the parol evidence rule was inapplicable to assessing the merits of Ravenswood's motion in limine because the rider was relevant evidence of the parties' negotiations and what had transpired between them; the rider was not admitted into evidence to vary the

terms of a contract but was admitted on the very issue of whether a contract, in fact, had been formed. We agree with the defendants.

As set forth in 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 83a, p. 681, "in determining the issue of whether the parties have made a contract, there is no parol evidence rule to be applied. On this issue, no relevant evidence, whether parol or otherwise, is excluded." See also *Damora* v. *Christ-Janer*, 184 Conn. 109, 114–15, 441 A.2d 61 (1981). Professor Corbin has instructed that there is no parol evidence rule to be applied when determining any one or more of the following issues: (1) whether the parties have made a contract; (2) whether the contract is void or voidable because of illegality, mistake, fraud or some other reason, or (3) whether the parties assented to a particular writing as the complete and accurate integration of a contract. 6 A. Corbin, Contracts (2002) § 573, pp. 73–75. No relevant evidence, whether parol or otherwise, is excluded on these issues. Id., p. 75.

In this case, Ravenswood filed a motion in limine to preclude the rider from being offered into evidence, claiming that the evidence would violate the parol evidence rule. Because the sole purpose of the jury trial in this case was to determine whether a contract existed between Merritt and Ravenswood for the sale of land, we conclude that the parol evidence rule was not applicable to this issue. Accordingly, the court did not abuse its discretion in denying Ravenswood's motion.

### III

Ravenswood also claims that the court abused it discretion by improperly restricting its cross-examination of a witness, ruling that such questioning was "beyond the scope." Ravenswood argues that "the court's limiting of [its] questions . . . prevented [it] from showing the jury that performance had begun under the contract

and that the items that Lane [had] requested from [Ravenswood] had in fact been received." Ravenswood further argues that "deprivation of this right of cross-examination was prejudicial, and denial of this right requires reversal by this court." (Internal quotation marks omitted.) We find no merit to this claim and take this opportunity to note that Ravenswood erroneously claimed in its brief and during oral argument before this court that this "restriction" occurred during its cross-examination of Lane. We have reviewed the trial transcript closely, however, and have discovered that Ravenswood conducted a direct examination of Lane and that the court's sustaining of Merritt's objection, of which Ravenswood now complains, occurred during Ravenswood's redirect examination, not during cross-examination.[3]

---

[3] Ravenswood refers us to the following colloquies, which occurred during Merritt's cross-examination of Lane and Ravenswood's redirect examination. It is the court's limitation on redirect examination that Ravenswood on appeal claims was improper. The relevant colloquy from cross-examination was as follows:

"Q. Okay. Would you read that letter out loud, please?

"A. It says, dear Jim. A letter to James Miele. Dear Jim. Enclosed are the releases to the three entities which have been executed by Mr. Merritt individually and as an officer of F. L. Merritt, Inc. I'm prepared to forward to you the executed releases with the executed contract to be held by you in escrow pending my receipt of the properly executed releases you sent to me on February 18 [2003] and the signed original release from Dicesare Bentley. Mr. Merritt has signed the contract on February 28, 2003, and I have been holding it since that date.

"Q. Okay. Would you explain what you meant by pending the receipt of the releases you sent to me on February 18?

"A. I was supposed to receive those, I understood, before I release the mortgage—the contract.

"Q. So, on March 14 [2003], you're indicating to Mr. Miele that you had not received certain releases, isn't that correct?

"A. That's correct.

"Q. Okay. Now—and do you recall which releases you're talking about in that March 14 letter?

"A. I referred to the Dicesare Bentley, with the engineers. I wanted the signed original release from Dicesare Bentley.

"Q. Okay. What about the releases that were sent on February 18 that you said you still hadn't received? You wanted properly executed releases according to that?

"The basic purpose of redirect examination is to enable a witness to explain and clarify relevant matters in his testimony which have been weakened or obscured by his cross-examination. . . . The scope of redirect examination, however, is limited by the subject matter of cross-examination." (Internal quotation marks omitted.) *State* v. *Williams*, 102 Conn. App. 168, 184, 926 A.2d 7, cert. denied, 284 Conn. 906, 931 A.2d 267 (2007). "Furthermore, [t]he extent and scope of redirect examination . . . may be limited within the

"A. That's correct.

"Q. And you hadn't received those yet?

"A. No."

Ravenswood argues that this questioning and testimony, which occurred during Merritt's cross-examination of Lane, opened the door to the following line of questioning during its redirect examination of Lane, which the court improperly limited:

"Q. And you testified earlier . . . that you were waiting to get the . . . original Dicesare Bentley release—

"A. My—

"Q.—let me finish my question, sir—before you were going to send the contract out, right?

"A. That's what my letter says.

"Q. Okay. But in your notes, which are exhibit twenty-three, you say that [you] would have sent [it] that day, the thirteenth of March, and you didn't have the original Dicesare Bentley release on the thirteenth or the fourteenth. You had a copy that was acceptable to you, right?

"A. I assum[ed] that I was going to get the Dicesare Bentley [release].

"Q. Okay.

"A. If he had gotten to me on the thirteenth, I think we would have had a deal.

"Q. But you got on the fourteenth a signed copy of the release which—

"A. That's right.

"Q.—you've testified was acceptable, correct?

"A. Uh-huh.

"Q. And then you sent a letter saying I'm going to send it, correctly—correct?

"A. I'm going to send?

"Q. You're going to send the contract, right? I'm prepared to send it.

"[Defendant Merritt's Counsel]: Your Honor, this is outside the scope.

"[The Plaintiff's Attorney]: He asked him what the intent was on his letter of March 14, 2003.

"[The Court:] The intent wasn't allowed. I believe it's beyond the scope. Again, I'll sustain the objection."

Ravenswood asked a few more questions and then rested.

discretion of the trial judge." (Internal quotation marks omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 560, 590 A.2d 914 (1991). What's more, the court has broad discretion in considering whether to allow redirect examination of a witness, and its decision will not be reversed unless it has abused that discretion. See *State* v. *Jones*, 205 Conn. 638, 666–67, 534 A.2d 1199 (1987).

On appeal, Ravenswood argues that Merritt's questions regarding what Lane meant by certain parts of the March 14, 2003 letter opened the door to questions regarding his intent on sending the letter. Ravenswood further argues that its inquiry during redirect examination of Lane was proper because it pertained "to whether the releases had been actually received and what the intent was in the letter if in fact that had occurred . . . ." It continues by arguing that "[t]he court's denial of [Ravenswood's] inquiry regarding the intent of Lane when he sent the letter to Miele was not merely harmless as it went to the sine qua non of what the case is about. [This limitation] prevented [Ravenswood] from showing the jury that performance had begun under the contract and that the items that Lane requested from [Ravenswood] had in fact been received." A review of the relevant colloquy from Lane's cross-examination, as quoted in footnote 3, however, does not reveal any question related to Lane's intent on sending the letter. Additionally, we also are mindful of the fact that Ravenswood did not attempt to explain to the court what information it was seeking from Lane; it merely stated that Lane had been questioned about his intent on sending the letter during redirect examination.

Furthermore, the transcript also reveals that the court did not tell Ravenswood that it could ask no further questions, nor did the court tell Ravenswood that it could not ask whether the releases, in fact, had been received before the letter was sent. The transcript does reveal that there was one objection on the ground

that the questioning was outside the scope, to which Ravenswood proffered only "[h]e asked him what the intent was on his letter of March 14, 2003." The court responded that intent had not been brought up during cross-examination and that the question, therefore, was beyond the scope. Ravenswood asked a few more questions unrelated to the releases, and it rested.

For Ravenswood to argue on appeal that the court foreclosed it from bringing out relevant information to the jury during what it termed "cross-examination" simply is without merit. Ravenswood already had had a full opportunity during its direct examination of this witness to ask any questions that were relevant and crucial to its case. During redirect, however, the court had discretion in limiting Ravenswood's questions to issues brought out during Merritt's cross-examination. See *State* v. *Williams*, supra, 102 Conn. App. 184. The portions of the transcript cited by Ravenswood do not reveal any questions from Merritt concerning Lane's intent on sending Ravenswood the March 14, 2003 letter. Accordingly, on the basis of the record before us, we conclude that the court did not abuse its discretion in sustaining Merritt's objection.

## IV

Ravenswood's final claim on appeal is that the court improperly denied its motion to set aside the verdict where the verdict was against the weight of the evidence and where the jury failed to follow the court's instructions. We disagree.

"[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only

where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached. . . . A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted." (Internal quotation marks omitted.) *Bosco* v. *Regan*, 102 Conn. App. 686, 694, 927 A.2d 325, cert. denied, 284 Conn. 914, 931 A.2d 931 (2007).

A

Ravenswood claims that the court abused its discretion in denying its motion to set aside the verdict on the ground that the jury failed to follow the court's instruction regarding construing ambiguities in a contract against the drafter. The defendants argue that there is no evidence that the jury failed to follow the court's instruction regarding contract ambiguities. We agree with the defendants.

Our law is very clear that "[i]n the absence of a showing that the jury failed or declined to follow the court's instructions, we presume that it heeded them." (Internal quotation marks omitted.) *State* v. *Santiago*, 269 Conn. 726, 762, 850 A.2d 199 (2004). In its charge to the jury, the court instructed the panel that "ambiguities and contract documents are to be resolved against the party responsible for [their] drafting. The party responsible for drafting the rider in this matter is [Merritt]. Therefore, any ambiguities in the rider should be construed against it." Ravenswood takes no issue with the court's instruction in this regard, but, rather, it claims that the jury could not have followed this instruction or it would have found in Ravenswood's favor because of ambiguities in the rider. We find nothing in the record, however, that would suggest that the jury did not follow the court's instructions to construe any ambiguities in

the rider against Merritt. Despite Ravenswood's argument to the contrary, our review of the rider leads us to the conclusion that it is quite possible that the jury found no ambiguity in it. Accordingly, Ravenswood has provided no showing that the court abused its discretion in denying the motion to set aside the verdict on this ground.

B

Ravenswood's final claim is that the court abused its discretion in refusing to set aside the verdict on the ground that the verdict was against the weight of the evidence because it proved all of the necessary elements to demonstrate that it had an enforceable contract with Merritt. We do not agree.

A question about the existence of a contract is a question that must be decided by the finder of fact. *Pagano* v. *Ippoliti*, 245 Conn. 640, 654, 716 A.2d 848 (1998). In this case, the jury was required to sort out those facts that would form the basis for its verdict and, after considering all of the evidence in this case, decided that a binding contractual relationship had not been formed between Ravenswood and Merritt. In considering Ravenswood's motion to set aside the verdict on the ground that the verdict was against the weight of the evidence, the court, being in a much better position than we are on appeal, having heard the testimony and observed the witnesses, determined that the weight of evidence was sufficient to support this jury's verdict. Having reviewed the record ourselves on appeal, we can discern no abuse of discretion in the court's denial of the motion to set aside the verdict, and Ravenswood has referred us to nothing in the record that would lead us to a contrary conclusion.

The judgment is affirmed.

In this opinion the other judges concurred.