THE HARTFORD-CONNECTICUT TRUST COMPANY *vs.*
THE RIVERSIDE TRUST COMPANY.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued December 8th, 1937—decided February 1st, 1938.

*Harry L. Nair,* with whom, on the brief, was *Solomon Elsner,* for the appellant (defendant).

*Olcott D. Smith,* with whom, on the brief, was *Lawrence A. Howard,* for the appellee (plaintiff).

HINMAN, J. The complaint alleged that on or about October 10th, 1929, the plaintiff made a draft for $2952, directed to the Hanover National Bank of New York, payable to the Chicago Live Stock Exchange, which draft came wrongfully into the possession of John Schmidt, Jr., who forged the indorsement of the payee and deposited it to his credit with the defendant, who thereupon indorsed it, the plaintiff paid it to the defendant through the Hartford Clearing House, now holds the same, and has demanded the amount thereof from the defendant, who refuses to pay it.

The defendant, after a first defense amounting to a general denial, interposed a second defense alleging, in substance, as follows: The Hartford Accident and Indemnity Company, a corporation engaged in the business of entering into contracts of insurance and indemnity against loss by reason of various hazards, hereinafter referred to as the Company, maintained a bank account with the plaintiff subject to its check or order. On and prior to October 10th, 1929, John Schmidt, Jr., was in charge of the fidelity department of the Company and had conceived a fraudulent scheme for the purpose of wrongfully obtaining moneys kept by the Company on deposit with the plaintiff. Pursuant thereto he prepared and presented to the Company a false claim purporting to be made by the Chicago Live Stock Exchange, a policyholder of the Company, for refund of premiums in the sum of $2952 and the Company issued a requisition upon the plaintiff to draw checks or drafts, including one for that amount to the order of the Live Stock Exchange. Pursuant to that requisition the plaintiff issued sev-

eral checks or drafts, including the one here involved, which were delivered by the plaintiff to the Company. Schmidt thereafter abstracted this check or draft, placed thereon the purported indorsement of the Live Stock Exchange and deposited it to his account with the defendant and the proceeds were subsequently withdrawn by him. Upon or shortly after the issuance of the checks or drafts the Company paid the plaintiff the total amount thereof, and the defendant alleged that the plaintiff has suffered no loss for which the defendant is accountable to it.

A third defense made the allegations of the second defense part of it and alleged further that the Company was the holder of a bond executed by the American Surety Company, agreeing to indemnify the Company for any loss or damage by reason of theft or embezzlement of any of its funds by its employees, and that prior to the commencement of this action the Company made claim on the American Surety Company for the payment of the loss sustained through the acts of Schmidt, including those pertaining to the check or draft in question, whereupon the Surety Company paid to the Company the amount of its claim. On May 16th, 1934, the plaintiff assigned to the Company all of its right, title and interest in and to this draft or check and all its rights connected with, growing out of or pertaining thereto and the moneys, deposits, liabilities and interests represented thereby, and on the same day the Company made a similar assignment thereof and of whatever other rights or claims it might have arising out of the theft or embezzlement by Schmidt to the American Surety Company. This defense alleged, further, that the draft or check was received by the defendant and credited to Schmidt in the honest belief that the indorsement of the payee was genuine, and without any negligence on

its part or knowledge of or participation in the fraud of Schmidt. Demurrers to the second and third defenses were interposed but overruled.

A fourth defense, making part of it the allegations of the second and third defenses, alleged that prior to the commencement of this action Schmidt had made restitution to the Company for any loss sustained by reason of the embezzlement or theft by him of the proceeds of the check or draft described in the complaint. A fifth defense alleged negligence on the part of the Company in failing to discover the fraud being perpetrated upon it by Schmidt prior to the issuance and payment of the check or draft and alleging that the loss resulting from nonpayment thereof was caused by such negligence. Demurrers to the fourth and fifth defenses were sustained. A substituted reply alleged that the plaintiff had reimbursed the owner, who was at that time the American Surety Company, and received the check or draft from it, with an assignment and subrogation of all the right, title, claim, interest and demand which the Surety Company had therein.

Upon the trial the parties stipulated as to facts covering in substance and in more detail the various transactions outlined in the pleadings as above stated, including the several assignments above mentioned, but the trial court limited its finding to the facts directly pertaining to the issuance and indorsement of the check or draft, the collection by Schmidt thereof from the defendant, the presentation by the defendant to the plaintiff and the payment thereof by it to the defendant, and a demand by the plaintiff and refusal of payment by the defendant, and held that the remaining paragraphs of the stipulation were immaterial and irrelevant to the real issues of the case. The further conclusions reached were that when the check or draft was presented to the plaintiff as

drawer and the party primarily liable thereon for payment, it bore the forged indorsement of the payee, which was at the time unknown to the plaintiff, also the indorsement of the defendant guaranteeing the genuineness of the forged indorsement, and relying upon the indorsement of the defendant the plaintiff made payment; also that the plaintiff had reimbursed the owner of the check or draft, who was at that time the American Surety Company, and received it with the assignment and subrogation above referred to.

The complaint as framed set up a good cause of action in favor of the plaintiff against the defendant and the facts found and the conclusions reached therefrom were sufficient to support a recovery upon that complaint. The applicable rules as established and applied with practical unanimity by the many cases are that when checks are presented to a drawee bank for payment its sole duty is to determine the genuineness of the drawer's signature and as to all other matters, including the genuineness of indorsements, it may rely on the warranties expressed by or implied from the indorsements of the presenting bank. Therefore a drawee bank which pays a check to the presenting bank on the forged indorsement of the payee's name, in ignorance of the forged indorsement, may recover the amount paid even though the presenting bank has accounted to its principal. The forged indorsement passes no title to the presenting bank, which hence has no right to collect on the paper (General Statutes, § 4340). By presenting checks for payment a bank asserts its ownership or its right to collect and the drawee in making payment has the right to rely on such assertion. The presenting bank obtains the drawee's money without right, by mistake, and a right of action accrues as soon as payment is made by the drawee. The presenting bank which obtains the

money of the drawee on a check on which an indorsement is forged is not without redress when the amount is recovered from it by the drawee, but has its remedy over against prior indorsers. 6 Zollman, Banks & Banking, §§ 4261, 4262, pp. 469 et seq.; 5 Michie, Banks & Banking, § 266, p. 486; Brady, Bank Checks (2d Ed.) p. 260; 7 Am. Jur., p. 433.

The considerations underlying these rules appear to have been well stated in *American Exchange National Bank* v. *Yorkville Bank*, 204 N. Y. Sup. 621, which involved checks drawn by an insurance company upon the plaintiff bank, indorsements of the payees being forged and the checks deposited in the defendant bank which collected them from the plaintiff. It is said (p. 625): "The Yorkville Bank was free to take those checks or not as it saw fit, and in taking them it relied, not upon anything done by the insurance company, but solely upon the credit . . . of its prior indorser (its own depositor) and his apparent title to the instruments. . . . When, after taking the checks, the Yorkville Bank indorsed them and presented them to the plaintiff for payment, it thereby warranted that all preceding indorsements were genuine, and that it had good title to the checks, and if the indorsements of the payees were forged that warranty was of course broken, and it had no title whatever to the checks, and consequently no right to collect any money thereon. . . . When the checks were presented to the plaintiff for payment, its sole duty was to determine the genuineness of the signature of the drawer; as to all other matters, including the genuineness of all indorsements, it was entitled to rely, and obviously did rely, upon the presumptive ownership of the Yorkville bank as the apparent holder, and upon its warranty of every preceding indorsement. . . . If all the indorsements were genuine, of course, the plaintiff

would be entitled to charge the payments to the account of its depositor, the drawer, because in that event the payments constituted literal compliance with the drawer's directions. If, however, the indorsements of the payees were forged, then the payments were not in compliance with the drawer's directions and they constituted, not the payment of any money of the drawer, but the payment of the money of the drawee, the plaintiff, and such payments gave the drawee no right to charge the payments to the drawer and did not discharge any part of its indebtedness to the drawer. . . . *Leather Manufacturers Bank* v. *Merchants National Bank,* 128 U. S. 26, 9 Sup. Ct. 3, 37 L. Ed. 342; *United States* v. *National Exchange Bank,* 214 U. S. 302, 29 Sup. Ct. 665, 53 L. Ed. 1006; 16 Ann. Cas. 1184. A drawee bank, which has paid checks the indorsements of which have been forged, is thus in the position of having paid out its own money in reliance upon a representation and warranty by a collecting bank that the latter had good title to the checks. Its right, upon discovery of the forgery, to recover the amounts so paid, rests, not upon any duty or relation to its depositor, but solely and exclusively upon the ground that the payment was induced by the collecting bank's false warranty. In all such cases the collecting bank has obtained the drawee bank's money without any right thereto. The rights of those two parties are thus wholly dependent upon their own positions, and it has been repeatedly and expressly held that negligence on the part of the drawer in failing to prevent or discover forgeries is wholly immaterial, and does not constitute a defense to the collecting bank." Among the numerous cases in which these principles have been applied, the following are illustrative: *Seaboard National Bank* v. *Bank of America,* 193 N. Y. 26, 85

N. E. 829; *First National Bank* v. *City National Bank,* 182 Mass. 130, 65 N. E. 24; *State Bank* v. *Mid-City Trust & Savings Bank,* 232 Ill. App. 186, 191; *First National Bank* v. *Northwestern National Bank,* 152 Ill. 296, 311, 38 N. E. 739; *People's Bank* v. *Franklin Bank,* 88 Tenn. 299, 12 S. W. 716; *First National Bank* v. *Farmers & Traders Bank,* 159 Ky. 141, 157, 166 S. W. 986; *Corn Exchange Bank* v. *Nassau Bank,* 91 N. Y. 74; *National Bank of Commerce* v. *First National Bank,* 51 Okl. 787, 790, 152 Pac. 596, L. R. A. 1916E, 537; *Land Title & Trust Co.* v. *Northwestern National Bank,* 196 Pa. St. 230, 238, 46 Atl. 420; Annotations, L. R. A. 1916E, 539, 17 Am. St. Rep. 898, 25 A. & E. Ann. Cas. 497.

Even more obviously than in the case of checks drawn by a third party depositor, a bank which, as did the present plaintiff, pays on a forged indorsement of the payee's name a check or draft drawn by it, purchased from it by a third party, is to be regarded as thereby parting with its own money

It is generally held that the liability of the collecting bank to repay moneys paid out by the drawee bank on forged indorsements is absolute and not dependent upon the liability of the latter to its depositor or the drawer, on the ground that there is no privity between the drawer and the collecting bank. *Fallick* v. *Amalgamated Bank of New York* (App. Div.) 249 N. Y. Sup. 238, 242; *Manufacturers Trust Co.* v. *Harriman National Bank Trust Co.,* 262 N. Y. Sup. 482, 484.

Granting that a condition precedent to the recovery of money paid by mistake is a finding that the receiver ought not in good conscience to retain it (*O'Neil* v. *Manufacturers National Bank,* 92 Conn. 667, 671, 104 Atl. 390), the principle is not applicable here. The money, "in equity and good conscience, has never

ceased to be [the plaintiff's] property." *Leather Manufacturers Bank* v. *Merchants National Bank, supra,* 35. The defendant, in accepting the forged indorsement, was guilty of the "first fault." *First National Bank* v. *Farmers & Traders Bank, supra,* 157. "The defendants and plaintiffs both paid the draft by mistake, neither knowing nor suspecting the forgery. If there were any question of negligence, the defendants preceded the plaintiffs, who relied on the former's indorsement, which carried with it assurance of the genuineness of the preceding indorsements. The equities between the parties are not equal." *Star Fire Ins. Co.* v. *New Hampshire National Bank,* 60 N. H. 442, 447; 6 Zollman, Op. Cit., 473. The same necessities which require the drawee to know the signature of the drawer and prevent his recovering money paid to an innocent holder of the paper, require that one who accepts an indorsement take precautions to learn whether it is genuine and he should not be permitted to retain the proceeds of a check or draft from the drawee who depended on his guaranty of the genuineness of the indorsement. *First National Bank of Danvers* v. *First National Bank of Salem,* 151 Mass. 280, 284, 24 N. E. 44.

As before stated, upon the allegations of the complaint and the facts included in the finding the plaintiff was entitled to judgment. If its right to such judgment is affected or impaired, it must be through changes in the relations of the parties concerned worked by reason of the succession of assignments, from the plaintiff to the Hartford Accident and Indemnity Company, by that company to the American Surety Company, and by the latter back to the plaintiff. While not affected by defenses arising after the assignment, normally the assignee of a chose in action takes subject to all equities and defenses which could

have been set up against the chose in the hands of the assignor at the time of the assignment. 4 Am. Jur., p. 304; *Mechanics Bank* v. *Johnson,* 104 Conn. 696, 701, 134 Atl. 231; *Hartford National Bank & Trust Co.* v. *Riverside Trust Co.,* 117 Conn. 276, 281, 167 Atl. 811; 6 C. J. S. §§ 114, 118, pp. 1164, 1167. The fourth defense, after adopting by reference the allegations of the preceding defenses, including the several assignments, alleged that prior to the commencement of this action Schmidt paid and conveyed to the Hartford Accident and Indemnity Company moneys and property sufficient in amount and value to make full restitution for any loss sustained by reason of the alleged embezzlement or theft by him of the proceeds of the check or draft. To this the plaintiff demurred on two grounds; first, that there is no privity between the Company and the defendant, and second, that in the absence of restitution received by the Company for the loss sustained by all embezzlements or thefts by Schmidt, the Company has not received full restitution as to the check or draft here involved. The court sustained the demurrer on the first ground but overruled the second, holding that the demurrer admitted, for its purposes, the allegation that full restitution for the proceeds of this check or draft had been made.

As we have said, for the purposes of an action by the plaintiff against the defendant, uncomplicated by assignments, there would be no privity between the defendant and the Hartford Accident and Indemnity Company, but after the assignment by the plaintiff to the Company, if the latter, upon that assignment, sought recovery of the amount of the check or draft from the defendant and it had already received restitution therefor from Schmidt, the defense of restitution would be available to the defendant. Such

restitution would be satisfaction of the underlying obligation by the party primarily responsible and ultimately liable for the loss. The principle is the same that has been applied in an action by a drawer-depositor against a depositary-drawee bank for the amount paid by the latter upon a check upon which indorsement had been forged—that the depositor, having been reimbursed, though indirectly, had suffered no damage. *Andrews* v. *Northwestern National Bank,* 107 Minn. 196, 117 N. W. 621. Consequently, if the defendant was able to prove that such restitution had been made to and accepted by the Company, before its assignment to the American Surety Company, subjection to that defense would attach to and accompany the chose in action through the subsequent assignments and be available in an action against the defendant by the plaintiff as a subsequent assignee. Restitution at a time before the assignment by the Company to the American Surety Company would be provable under the allegation of the fourth defense that it was made "prior to the commencement of this action;" therefore that allegation is sufficient for the purposes of the defense contemplated by it. *Blakeslee* v. *Water Commissioners,* 106 Conn. 642, 649, 139 Atl. 106; *Middletown Trust Co.* v. *Middletown National Bank,* 110 Conn. 13, 21, 147 Atl. 22. The demurrer to the fourth defense was not sustainable because of lack of privity or other discernible ground, and the ruling sustaining it deprived the defendant of an opportunity to show, if it could, that restitution was made and at a time which would render it available as a defense in this action. In this there was error.

The assigment of error in sustaining the demurrer to the fifth defense counting on negligence of the Company in failing to discover earlier Schmidt's

fraudulent course of conduct is not pursued by the defendant in brief or argument.

It was included in the stipulated facts that on May 16th, 1934, the Hartford Accident and Indemnity Company received from the American Surety Company under the latter's bond, already mentioned, a sum which included the amount ($2952) of the check or draft here involved; that on July 3d, 1934, the plaintiff, on demand of the American Surety Company, paid to it that sum; and that on July 12th, 1934, the Hartford Accident and Indemnity Company and the Aetna Casualty and Surety Company, co-sureties upon a bond to indemnify the plaintiff for losses sustained by forged indorsements on checks which plaintiff had paid, subject, however, to $1000 deduction for each check, paid the plaintiff $1952, being the amount of this check or draft less the $1000 deduction. The payments made under the indemnity bonds were of the nature of payments by an insurer to an insured on account of a loss insured against. The defendant, as the party primarily liable for the loss to the plaintiff insured, is not entitled to the benefit of the payment so made to it. "It came to the plaintiff from a collateral source, wholly independent of the defendant, and which as to him was *res inter alios acta.*" *Regan* v. *New York & N. E. R. Co.*, 60 Conn. 124, 130, 22 Atl. 503; *Roth* v. *Chatlos*, 97 Conn. 282, 288, 116 Atl. 332. For the same reason, benefit of payment made by the American Surety Company to the Hartford Accident and Indemnity Company is not available to the party liable to it on account of payment upon the forged indorsement. The payment by the plaintiff to the Surety Company to whom, as assignee of its depositor, it had paid the amount of the check in question, was a loss, occasioned by the defendant, for which it was entitled to recover without

diminution because of payments under the indemnity bonds. Since the facts pertaining to these considerations did not affect the plaintiff's right of recovery, the defendant was not prejudiced by their exclusion from the finding.

The defendant filed, in addition to the several defenses, a counterclaim based upon alleged negligence of the plaintiff bank, while temporary receiver of the defendant in 1931, in causing to be canceled a bond the coverage of which included indemnity of the defendant for losses sustained through payment of checks bearing forged indorsements, and in procuring to be substituted a bond which did not include coverage for forgery, whereby the defendant alleged that it lost the protection which the bond previously in effect had afforded against such losses. A motion to strike out this counterclaim was granted on the grounds, stated therein, that the matter alleged is not connected with nor does it arise out of the matter in controversy under the complaint, and is not a debt which is mutual to that asserted in the complaint. It has been settled since *Harral* v. *Laverty,* 50 Conn. 46, 63, that "a defendant by a counterclaim under the statute [now General Statutes, § 5511], cannot bring in for adjudication any matter that is not so connected with the matter in controversy under the original complaint that its consideration by the court is necessary for a full determination of the rights of the parties as to such matter in controversy, or, if it is of a wholly independent character, is a claim upon the plaintiff by way of set-off, and not a claim against a co-defendant." See also *Downing* v. *Wilcox,* 84 Conn. 437, 440, 80 Atl. 288. The cause of action set up in the complaint is contractual in nature, whether it be regarded as based upon defendant's guarantee of prior indorsements, or for money had and received, or to recover

payment made under a mistake. The defendant concedes that its counterclaim was not asserted by way of set-off; it set up a tort arising out of an entirely different transaction which did not grow out of the subject-matter of the complaint or have any such connection with it as would warrant interposing it as a counterclaim. The tort relied on has nothing to do with the contract sued upon. It arose from facts long subsequent to and independent of those upon which the plaintiff's cause of action rests. There was no error in striking it out. *Schaefer* v. *O. K. Tool Co., Inc.,* 110 Conn. 528, 531, 148 Atl. 330.

There is error only in the ruling on the demurrer to the fourth defense and the case is remanded for further proceeding upon the issues involved in that defense.

In this opinion the other judges concurred.