# BECKY SUTCLIFFE *v.* FLEETBOSTON FINANCIAL CORPORATION ET AL.
## (AC 27644)

Bishop, Lavine and Robinson, Js.

Argued March 14—officially released July 1, 2008

*Zbigniew S. Rozbicki*, for the appellant (plaintiff).

*Thomas J. Sansone*, with whom, on the brief, was *Sherwin M. Yoder*, for the appellee (named defendant).

*Opinion*

ROBINSON, J. The plaintiff, Becky Sutcliffe, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendant FleetBoston Financial Corporation.[1] On appeal, the plaintiff claims that the court improperly (1) admitted into evidence certain testimony and documents, (2) instructed the jury and

---

[1] Bank of America is the successor of the defendant FleetBoston Financial Corporation, which, in turn, is the successor institution to BankBoston, N.A., formerly known as Bank of Boston Connecticut, the bank where the check at issue was deposited. In this opinion, we will refer to BankBoston, N.A., and its successors simply as the defendant.

We also note that the plaintiff filed this action against Sovereign Bank of New England (Sovereign Bank). On February 28, 2006, the court granted the defendants' motion for a directed verdict in favor of Sovereign Bank. Specifically, the court stated that "there was not any evidence as to Sovereign Bank, and I am directing a verdict in their favor." The plaintiff does not challenge this ruling on appeal.

(3) denied her motion for a directed verdict. We disagree and, accordingly, affirm the judgment of the trial court.[2]

The following procedural history and facts reasonably found by the jury are necessary for our discussion. Attorney Edmund Hare represented the plaintiff in connection with a workers' compensation claim. Hare obtained a "full and final" settlement on behalf of the plaintiff in the amount of $30,000. The plaintiff was to receive $20,000 and Hare was to receive $5000 as the fee for his legal services. The remaining $5000 was to be paid to the plaintiff's treating physician, Mark Jay.

Hare received the $30,000 check, made payable only to the plaintiff, shortly after February 2, 1999. The plaintiff's signature on the check was forged, and Hare appropriated all of the proceeds from that check for his use. The plaintiff had not granted Hare any permission or authorization to sign the check or to deposit the money for his use. The plaintiff contacted Hare's office on several occasions to inquire as to when she would receive her settlement funds but had a difficult time speaking directly with Hare.

In response to the plaintiff's repeated inquiries, Hare eventually made four payments to the plaintiff, totaling $15,500, from March 25 through June 18, 1999. On March 3, 2000, the plaintiff executed an affidavit, as a part of her criminal complaint against Hare, indicating that Hare had failed to remit to her the outstanding balance of $4500 and to pay the $5000 owed to Jay. By way of a check dated March 6, 2000, Hare paid the plaintiff $4500 and on the "description" line of the check he

---

[2] As alternate grounds for affirming the judgment of the trial court, the defendant claims that the court improperly denied (1) its motion for a directed verdict and (2) its motion for summary judgment. As a result of our resolution of the issues raised by the plaintiff, we need not reach these claims. See *Connecticut Education Assn., Inc.* v. *Milliman USA, Inc.*, 105 Conn. App. 446, 448 n.2, 938 A.2d 1249 (2008).

wrote "W. Comp." This notation was his shorthand for "workers' compensation." During the time period from March 25, 1999, to March 6, 2000, Hare paid the plaintiff a total of $20,000, the amount of her interest in the settlement check.

The plaintiff commenced an action against Hare after receiving the $20,000. In her amended complaint, dated April 5, 2000, she alleged theft, intentional infliction of emotional distress, violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and forgery. Hare informed the plaintiff that he was judgment proof and that he would declare bankruptcy. Hare then agreed to pay the plaintiff $5000 in exchange for a release by the plaintiff of all her claims against him.[3]

On February 13, 2001, the plaintiff commenced the present action against the defendant. In her amended complaint, dated September 14, 2001, the plaintiff alleged that the defendant negligently paid the settlement check on a forged signature and alleged conversion of the check pursuant to General Statutes § 42a-3-420. The defendant answered the complaint and pleaded the special defense that the "plaintiff has received payment, in whole or in part, of the sums to which she was entitled under the instrument in question."

The case was tried before the jury. The court, *Trombley, J.*, declared a mistrial on the basis of juror misconduct. Prior to the start of evidence in the second trial, the plaintiff renewed her prior motion in limine to preclude evidence of Hare's payments to her. The court, *Bozzuto, J.*, denied the motion and permitted the defendant to present evidence of Hare's payments. The jury returned a verdict in favor of the defendant. The court

---

[3] From this $5000 settlement, the plaintiff received $2746.44 after paying her legal fees.

rendered judgment accordingly and denied the plaintiff's postverdict motion to set aside the verdict and for a new trial. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly admitted into evidence certain testimony and documents. Specifically, she argues that the evidence of Hare's payments to her was presented to the jury improperly. We are not persuaded.

The following additional factual and procedural history is relevant to our discussion. During the first trial, the plaintiff filed a motion in limine to preclude any evidence regarding the payments made by Hare to the plaintiff. The court, *Trombley, J.*, granted the motion, stating, "I have instructed counsel, and I so instruct them now, and instruct all of the witnesses who might be in the courtroom, not to mention any issue of payment by attorney Hare, any recovery from any other source that [the] plaintiff might have received. . . . Again, I instruct everybody to stay away from the issue of payment."

A few days later, the court reconsidered its ruling. "So, payment is clearly central to this case, and, as a result, the court is going to allow testimony that it heard outside of the jury's presence to be given both by the plaintiff and attorney Hare. And anybody else counsel wants to call before the jury." The plaintiff objected to this ruling.

Following the mistrial, and prior to the start of the second trial, the plaintiff renewed her motion in limine, which the parties argued before the court, *Bozzuto, J.*, on February 23, 2006. The court denied this motion. It

first concluded that the defendant's argument pertaining to the law of the case doctrine was persuasive.[4] The court then identified a second basis for denying the motion. "But even putting that aside, the law of the case aside, I think payment is absolutely relevant with respect to the issue of—fundamental issue in this case, if the plaintiff is to prevail, that is, with respect to damages, and I also find the *Hartford-Connecticut Trust Co.* v. *Riverside Trust Co.*, 123 Conn. 616, 197 A. 766 (1938), case very persuasive and on point, and I am going to deny the motion in limine and I am going to allow that evidence before the jury in this case." The court noted the plaintiff's objection on the record.

As a preliminary matter, we set forth the applicable standard of review with respect to evidentiary claims. "The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse

---

[4] "Underlying the law of the case doctrine is the view that [a] judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . .. The doctrine provides that [w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . . Nevertheless, [a] judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision." (Citation omitted; internal quotation marks omitted.) *Ocwen Federal Bank, FSB* v. *Charles*, 95 Conn. App. 315, 327 n.12, 898 A.2d 197, cert. denied, 279 Conn. 909, 902 A.2d 1069 (2006).

of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *Desrosiers* v. *Henne*, 283 Conn. 361, 365–66, 926 A.2d 1024 (2007); *Porter* v. *Thrane*, 98 Conn. App. 336, 339–40, 908 A.2d 1137 (2006).

Both parties agree that a determination of the applicability of our Supreme Court's decision in *Hartford-Connecticut Trust Co.* v. *Riverside Trust Co.*, supra, 123 Conn. 616, controls the outcome of the issues in the present case. Our analysis begins, therefore, with a discussion of that case. In October, 1929, the plaintiff, at the instruction of the Hartford Accident and Indemnity Company, made a draft in the amount of $2952, payable to the Chicago Live Stock Exchange. Id., 619. An individual, John Schmidt, Jr., forged the endorsement of the payee and deposited the draft to his credit with the defendant. Id. The plaintiff paid the draft to the defendant and commenced an action to recover the amount. Id. The defendant alleged that Schmidt, prior to the commencement of the action, had made restitution for any loss sustained by reason of his theft or embezzlement. Id., 621.

As part of its analysis, our Supreme Court considered the defendant's defense that "Schmidt paid and conveyed to the Hartford Accident and Indemnity Company moneys and property sufficient in amount and value to make full restitution for any loss sustained by reason of the alleged embezzlement or theft by him of the proceeds of the check or draft." Id., 627. The plaintiff had demurred to his defense on two grounds: first, that there was no privity between the Hartford Accident and Indemnity Company and the defendant; second, the Hartford Accident and Indemnity Company had not received full restitution. Id. The trial court sustained the plaintiff's demurrer on the first ground. Id. Our Supreme Court concluded that the trial court acted

improperly and that if the Hartford Accident and Indemnity Company had received restitution from Schmidt, the forger, then the defense of restitution would be available to the defendant. Id. "Such restitution would be satisfaction of the underlying obligation by the party primarily responsible and ultimately liable for the loss. The principle is the same that has been applied in an action by a drawer-depositor against a depositary-drawee bank for the amount paid by the latter upon a check upon which endorsement had been forged—that the depositor, *having been reimbursed, though indirectly, had suffered no damage.*" (Emphasis added.) Id., 627–28. As a result of this conclusion, our Supreme Court determined that the "demurrer to [this defense] was not sustainable because of lack of privity or other discernible ground, and the ruling sustaining it deprived the defendant of an opportunity to show, if it could, that restitution was made and at a time which would render it available as a defense in this action. In this there was error [by the trial court]." Id., 628.

In the present case, the defendant sought to introduce evidence that the plaintiff received restitution from the forger, Hare. Specifically, the defendant intended to establish, through testimony and documentary evidence, that Hare had made payments totaling $20,000 to the plaintiff. These payments equaled the amount of her interest in the settlement check.[5] This evidence would support the defendant's claim that she did not sustain damages as a result of payment of the forged settlement check. Accordingly, this evidence was relevant under the *Hartford-Connecticut Trust Co.* precedent because the receipt of the total amount of the

---

[5] General Statutes § 42a-3-420 (b) provides: "In an action under subsection (a), the measure of liability is presumed to be the amount payable on the instrument, *but recovery may not exceed the amount of the plaintiff's interest in the instrument.*" (Emphasis added.)

plaintiff's interest in the settlement check constituted a defense available to the defendant.[6]

Our conclusion is buttressed by decisions from other jurisdictions. For example, the Michigan Court of Appeals, in *Pamar Enterprises, Inc.* v. *Huntington Banks of Michigan*, 228 Mich. App. 727, 580 N.W.2d 11 (1998), stated that "[t]he mitigation of damages defense provides that *the liability of a drawee or depository bank* in a conversion action brought by an intended payee *is reduced to the extent that the intended payee receives the proceeds of the check applied to the specific obligation the check was intended to discharge.*" (Emphasis added.) Id., 736–37. That court further explained that the mitigation of damages defense was intended to prevent unjust enrichment of the intended payee and to comport with the general intent of the Uniform Commercial Code remedies that an aggrieved party should be put in as a good a position, as if the other party had performed fully, but not in a better position. Id., 737. Courts from other jurisdictions have applied this defense. See, e.g., *Commercial Credit Corp.* v. *Empire Trust Co.*, 260 F.2d 132, 134 (8th Cir. 1958) (bank may be relieved of liability by reason of money reaching intended person); *Ambassador Financial Services, Inc.* v. *Indiana National Bank*, 605 N.E.2d 746, 752 (Ind. 1992) ("The mitigation of damages defense reduces the bank's liability to the extent the proceeds of the check were received by the payee and applied to the specific debt to which the payee intended they apply. . . . The mitigation of damages defense is aimed

---

[6] The plaintiff also claims that the payments from Hare could have been future credits against her potential damages from her theft, intentional infliction of emotional harm, CUTPA and forgery claims against Hare. We note that as a result of both the amount of Hare's payments, totaling the exact amount of the plaintiff's interest in the settlement check, and the fact that Hare's payments preceded the commencement of the plaintiff's lawsuit against Hare, the jury, as the finder of fact, was free to determine that the payments were to compensate the forgery of the settlement check.

at preventing unjust enrichment, and it exists to prevent a payee from recovering on a forged endorsement to the extent the payee did not suffer damages in the transaction." [Citation omitted.]); *Comerica Bank* v. *Michigan National Bank*, 211 Mich. App. 534, 538, 536 N.W.2d 298 (1995) (noting that bank may avoid liability for honoring check with improper endorsement when bank can prove intended payee received proceeds of check); *Bankers Trust of South Carolina* v. *South Carolina National Bank of Charleston*, 284 S.C. 238, 244, 325 S.E.2d 81 (S.C. App. 1985) (courts have developed equitable rule that when proceeds of forged check reach intended payee, generally there can be no cause of action because there are no damages).

On the basis of the foregoing, the court properly admitted the evidence of Hare's payments to the plaintiff in the amount of her interest in the settlement check.[7] We conclude that the court did not abuse its discretion by admitting into evidence the testimony and documents regarding Hare's payments to the plaintiff.

II

The plaintiff next claims that the court improperly instructed the jury on the defendant's special defense that she had received her interest in the settlement check as a result of Hare's payments. We are not persuaded.

We begin by establishing the applicable standard of review. "When we review a challenged jury instruction, [t]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court

---

[7] The plaintiff also claims that the defendant failed to plead its special defense. We conclude that this claim is without merit. As part of its answer, dated September 28, 2001, the defendant presented the following special defense as to both counts of the plaintiff's complaint: "The plaintiff has received payment, in whole or in part, of the sums to which she was entitled under the instrument in question."

of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Instructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues. . . . The court should submit to the jury all issues as outlined by the pleadings and as reasonably supported by the evidence. . . . [See also] 1 D. Wright & W. Ankerman, Connecticut Jury Instructions (Civil) (4th Ed. 1993) § 2, p. 3." (Citations omitted; internal quotation marks omitted.) *Pelletier* v. *Sordoni/Skanska Construction Co.*, 286 Conn. 563, 591, 945 A.2d 388 (2008); *Ravenwood Construction, LLC* v. *F. L. Merritt, Inc.*, 105 Conn. App. 7, 11–12, 936 A.2d 679 (2007).

The court charged the jury with respect to the plaintiff's causes of action, as well as the defendant's special defense.[8] In view of the evidence adduced at trial, which

[8] The court charged the jury in relevant part: "Furthermore, the [defendant] asserts the plaintiff has been paid—has been paid fully by Mr. Hare the sum of $20,000, which was the amount the plaintiff was to receive from the proceeds of the $30,000, which the [defendant] claims was the plaintiff's interest in that particular check. . . . The [defendant] claims that its responsibility, in the event that you find that the bank was negligent or committed conversion relative to the check to the plaintiff, was $20,000, which represents her interest in the $30,000, and that the plaintiff received the $20,000 from its depositor or customer, Mr. Hare. Therefore, the [defendant] asserts that the plaintiff received the sums to which she was entitled . . . and that the bank has no further monetary obligation to the plaintiff.

"The plaintiff generally responds to that defense, the [defendant's] assertion that she received the $20,000 to which she was entitled to the check—from the check proceeds by claiming that the several payments that she received from Mr. Hare were not for the workers' compensation case but were in partial payment for the emotional distress and other damages that she suffered as a result of Mr. Hare's unethical and tortious conduct. She, therefore, asserts that the bank remains liable to her for the full value of the check, that is the $30,000, as a result of the [defendant's] lack of ordinary care in conversion of the check. . . .

we set forth in greater detail in part III, and in light of our Supreme Court's decision in *Hartford-Connecticut Trust Co.* v. *Riverside Trust Co.*, supra, 123 Conn. 616, we conclude that the court's instructions, with respect to the defendant's special defense, read as a whole, were adapted properly to the law and provided the jury with sufficient guidance and that no injustice was done. See *Pickering* v. *Rankin-Carle*, 103 Conn. App. 11, 16, 926 A.2d 1065 (2007). The plaintiff has failed to establish that the court's instructions were improper.[9] After carefully reviewing the entire record, we determine that the instructions were adequate because they provided the jury with a clear understanding of the issues and proper guidance in determining those issues. See *Al-Janet, LLC* v. *B & B Home Improvements, LLC*, 101 Conn. App. 836, 840, 925 A.2d 327, cert. denied, 284 Conn. 904, 931 A.2d 261 (2007).

## III

The plaintiff's final claim is that the court improperly denied her motion for a directed verdict. Specifically,

"The defendant in this case, in addition to denying the claims made by the plaintiff, has affirmatively asserted a special defense to the plaintiff's claim. The defendant had the burden of proof as to the allegation of its special defense upon which it relies. The plaintiff does not have the burden to disprove the allegations of the defendant's special defenses, rather each party has the burden of proving that party's own claims and no burden to disprove the claims of that party's adversary. So, the plaintiff has the obligation to prove negligence and statutory conversion. The defendant had the obligation to prove the special defense of payment. . . .

"The defendant asserts one special defense, and it reads as follows: The plaintiff has received payment in whole or in part of the sums to which she was entitled under the instrument in question, that being the check in question. If a plaintiff seeks recovery of the amount of a forged check or draft from the defendant bank and the plaintiff has received money from the actual forger, the defense of payment is available to the defendant bank."

[9] We also disagree with the plaintiff's claim that the court should have instructed the jury as to the statutory definition of payment set forth in General Statutes § 42a-3-602. As we have noted, the instructions, as given, were correct in law, adapted to the issues and sufficient for the guidance of the jury.

she argues that "[t]here was no genuine issue as to any material fact, and the plaintiff was entitled to judgment as a matter of law for the amount of the draft, $30,000." We disagree.

"Our standard of review of the court's refusal to grant [motions for directed verdicts and to set aside verdicts] requires us to consider the evidence in the light most favorable to the prevailing party, according particular weight to the congruence of the judgment of the trial judge and the jury, who saw the witnesses and heard their testimony. . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached [its] conclusion. . . . While it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . If the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury. . . . Our standard of review, where the trial court's action on a motion to set aside a verdict is challenged, is whether the trial court clearly abused its discretion. . . . The decision to set aside a verdict is a matter within the broad legal discretion of the trial court and it will not be disturbed unless there has been a clear abuse of that discretion." (Internal quotation marks omitted.) *Mokonnen* v. *Pro Park, Inc.*, 96 Conn. App. 625, 631–32, 901 A.2d 725, cert. denied, 280 Conn. 924, 908 A.2d 1088 (2006); see also *Coniglio* v. *White*, 72 Conn. App. 236, 240, 804 A.2d 990 (2002).

As we noted previously, the defendant's claim that the plaintiff had received the full amount of her interest in the settlement check constituted a viable defense to the plaintiff's causes of action. After reviewing the evidence, in a light most favorable to the prevailing party, i.e., the defendant, we conclude that there was

ample evidence to support the jury's verdict. Accordingly, we conclude that the court's denial of the plaintiff's motion for a directed verdict did not constitute an abuse of discretion.

In her written admissions, her affidavit and her testimony in court, the plaintiff acknowledged that she was to pay $5000 to Hare and $5000 to Jay from her $30,000 settlement check, leaving a remainder of $20,000. From March 25 to June 18, 1999, Hare made four payments to the plaintiff totaling $15,500. By way of a check dated March 6, 2000, the plaintiff received $4500, for a total of $20,000 from Hare. This was the exact amount owed to the plaintiff for the workers' compensation settlement. Notably, the final check indicated that it was for the plaintiff's workers' compensation proceeds. At the time of the final payment to the plaintiff, Hare also made the $5000 payment to Jay, the plaintiff's treating physician, for her workers' compensation injuries. Finally, the plaintiff's affidavit indicated that as of March 3, 2000, she had not received the balance of her $20,000 settlement for her workers' compensation claim. This indicated that the prior payments were, in effect, repayment for Hare's improper use of the plaintiff's settlement funds.

On the basis of this evidence, viewed in a light most favorable to the defendant, we conclude that the court did not abuse its discretion in denying the plaintiff's motion for a directed verdict. It was well within the province of the jury to find that Hare's payments were intended to pay the plaintiff her interest in the forged check. As a result, the plaintiff received the full amount of her interest in the settlement check and, under the facts and circumstances of the present case, was not damaged by the actions of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.