******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ALEX MAZIER ET AL. *v.* SIGNATURE POOLS, INC.
(AC 36283)

Gruendel, Lavine and Bishop, Js.

*Argued February 5—officially released August 4, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Povodator, J.)

*Stephan E. Seeger*, with whom, on the brief, was *Igor
G. Kuperman*, for the appellant (defendant).

*Michael J. Barnaby*, for the appellees (plaintiffs).

*Opinion*

BISHOP, J. In this breach of contract and negligence action involving a dispute between the plaintiff homeowners and the defendant swimming pool contractor, the defendant, Signature Pools, Inc., appeals from the judgment rendered upon a jury verdict in favor of the plaintiffs, Alex Mazier and Giselle Mazier, for $62,142.86.[1] On appeal, the defendant claims that the trial court, *Povodator*, *J.*, incorrectly (1) denied certain of the defendant's requests to charge; (2) denied a motion in limine regarding the law of the case; (3) permitted parol evidence where the language of the contract was clear and unambiguous; (4) denied the defendant's motion for a directed verdict; (5) denied the defendant's request to charge on professional negligence; and (6) denied the defendant's motion for a mistrial. We affirm the judgment.

At trial, the jury reasonably could have found the following facts. On March 22, 2007, the parties entered into a contract for the defendant to construct an in-ground swimming pool at the plaintiffs' residence in Wilton (town). Although the contract contained multiple clauses, the following provisions are particularly germane to the parties' ultimate dispute and to our resolution of this appeal:

"APPLICATION FOR PERMIT: If a permit authorization is part of this Agreement, [the defendant] shall attempt to obtain the building permit for you for the construction of the pool. If a building permit cannot be obtained by [the defendant], you shall attempt to obtain the permit at your expense. If the permit cannot be obtained, this Agreement will be canceled and any deposit refunded less any costs incurred by [the defendant]. You shall be responsible for obtaining any zoning variances, wetland approvals, coastal area management approvals, changes, plot plans, test borings, percolation tests, certificates of occupancy or special items required for [the defendant's] performance of the work. You shall pay all costs and fees in connection with obtaining/doing any of them. You shall be responsible for all required variances, surveys, and associated permits and fees. . . .

"POOL LOCATION: You represent that you have title to the property that the pool is to be located on. You also represent that the access way and pool location is within your property lines and clear of setbacks, wetlands restrictions, underground installation and overhead power lines and that the equipment and pool location complies with all applicable zoning laws.

"You also represent that the pool location is on original ground and that it will not interfere with support of existing or proposed structures. You also acknowledge that you directed the location of the pool and other improvements and you shall not hold [the defendant]

liable for any alleged incorrect location of the pool. You will indemnify, hold harmless and defend [the defendant] from any claim, loss or expense (including reasonable attorneys' fees) arising by reason of trespass and/or damage by [the defendant] resulting from your designation of pool location or access routes or by reason of any work by you or others."

Before entering into the contract with the defendant, the plaintiffs had purchased their home from Carmine Tomas, who had constructed it on speculation. After purchasing the property, and upon deciding to enhance it with a pool, the plaintiffs sought the advice of Tomas and his spouse, Tracy Castelli. The plaintiffs retained Castelli to assist them in the selection of the pool contractor, in the process of determining the placement and installation of the pool, and for landscaping the property. Pursuant to her role as the plaintiffs' advisor and agent, Castelli prepared a tissue sketch to show the pool's general dimensions and location.[2]

The jury heard evidence, as well, that Tomas, acting on behalf of the plaintiffs, submitted an application to the town for approvals, including zoning, for the construction of the pool and its location. With the application, Tomas submitted a plot plan that had been developed by a land surveyor at the behest of the plaintiffs. This plan showed the pool's proposed location, including its distance from adjacent property lines. The town approved the plaintiffs' plans and application on March 29, 2007. The plot plan submitted on behalf of the plaintiffs, together with their application, became part of the town's building permit file related to the pool. Once the approvals had been obtained, the defendant, on April 11, 2007, filed an application for a building permit with the town, making reference in the application to the town's prior zoning approval for the pool construction. Castelli, on behalf of the plaintiffs, provided the defendant with a copy of the plot plan filed with the town.[3]

Thereafter, the defendant constructed the pool in a location consistent with the sketch it asserted Castelli had provided to the defendant and in accord with the location of the stakes the defendant had utilized to mark the pool's intended location.

Unbeknownst to the parties, the pool was not situated in accord with the plot plan but, instead, it was located closer to an adjacent property line than required by the setback provisions of the town's zoning regulations. During the spring of 2008, the town informed the plaintiffs that the pool had been situated in a location on the property that resulted in a violation of the town's zoning regulations regarding the required minimum setbacks from an adjacent property line. Unable to obtain a variance and subject to a subsequent cease and desist order from the town, the plaintiffs, on January 6, 2011, entered into a stipulation with the town, agreeing that

the pool was in an improper location, agreeing to pay the town's legal fees, and agreeing to relocate the pool. In December, 2011, the plaintiffs commenced this action which resulted, following a verdict for the plaintiffs, in an award of $62,142.86 for the plaintiffs against the defendant. This appeal followed.

I

The defendant claims that the court incorrectly denied its request to charge on the "exculpatory provision" in the contract. The defendant claims, as well, that the court incorrectly instructed the jury that the provision should be ignored and that the plaintiffs' acknowledgements regarding their responsibility for the location of the pool were " 'ambiguous' . . . ." The defendant bases this argument on its assertion that the contract between the parties contained a clear, precise and unambiguous exculpatory provision in favor of the defendant, and on the ground that the contract contained a provision through which the plaintiffs acknowledged that they bore the responsibility for the location of the pool and that they did in fact direct its placement.

Indeed, the contract between the parties contained an "exculpatory provision" that included both an acknowledgement by the plaintiffs that they directed the location of the pool, and language purporting to indemnify and hold harmless the defendant from any claims relating to the pool's siting. As noted, the first sentence, the acknowledgement of responsibility, reads: "You also acknowledge that you directed the location of the pool and other improvements and you shall not hold [the defendant] liable for any alleged incorrect location of the pool." The second sentence, containing the indemnification and hold harmless provision, reads: "You will indemnify, hold harmless and defend [the defendant] from any claim, loss or expense (including reasonable attorneys' fees) arising by reason of trespass and/or damage by [the defendant] resulting from your designation of pool location or access routes or by reason of any work by you or others."

In regard to the "exculpatory provision" as a whole, the defendant submitted the following request to charge: "You've heard evidence regarding contract between the [p]laintiff and the [d]efendant in this case. If you find that the contract in this case expressly and unambiguously purports to release the [defendant] from prospective liability for the incorrect location of the pool and that the terms of the contract are unambiguous, understandable, clear and coherent and that an ordinary person of reasonable intelligence would understand that, by signing the agreement, he or she was releasing the [defendant] from liability for the incorrect location of the pool, then you must find that the [d]efendant is not liable to the [p]laintiffs for the losses and damages arising from the incorrect location of the pool."

The court did not give the defendant's requested charge. Instead, the court gave separate and distinct instructions on each of the two sentences contained in this part of the contract. On appeal, the defendant argues that both of these instructions were in error.

We begin by setting forth the legal principles and standard of review that guide our analysis. "Our standard of review regarding properly preserved claims of improper jury instructions is well settled. In reviewing claims of instructional [impropriety], we seek to determine whether it was . . . reasonably possible that the jury was misled by the trial court's instructions . . . . [T]he charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Although [a] request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given . . . [a] refusal to charge in the exact words of a request . . . will not constitute error if the requested charge is given in substance. . . . Thus, when the substance of the requested instructions is fairly and substantially included in the trial court's jury charge, the trial court may properly refuse to give such instructions." (Citation omitted; internal quotation marks omitted.) *State* v. *McCarthy*, 105 Conn. App. 596, 617–18, 939 A.2d 1195, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008). With this standard in mind, we review the court's instructions on the two sentences separately.

A

As to the first sentence, the court stated: "The contract also contains the following language. 'You also acknowledge that you directed the location of the pool and other improvements and shall not hold [the defendant] liable for any alleged incorrect location of the pool.'

"In the context of this case I instruct you that the language is ambiguous. The language could refer to errors in location caused by misdirection by the property owner, plaintiffs. It could refer to errors in location caused by the contractor. It could refer to errors in location for which neither the property owner nor the contractor is at fault. And it could refer to errors in location for which both the property owner and the

contractor [are] at fault.

"Resolution of this ambiguity is entrusted to you, the goal being to determine and enforce the likely intent of the parties. In trying to resolve this ambiguity, however, there is a rule which you may wish to take into account. If you are unable to determine the intent of the parties from the language of the surrounding circumstances, you may construe that language against [the] defendant . . . the party who drafted the contract.

"This is because the party drafting the language is the one who had the best opportunity to make clear the intended meaning of the provision. However, you should not construe the contract against [the] defendant, the party who drafted the contract, if it leads to a result that was not intended by the parties, or if it leads you to a result that is not a reasonable meaning of the contract."

On the basis of our review of the record, we believe the court's instruction on the first sentence of this part was correct on the law and appropriate to the circumstances. At the outset, we note that our jurisprudence is clear that whether language of a contract is clear and unambiguous presents a question of law. *State* v. *Dzwonkowski*, 151 Conn. App. 81, 93, 94 A.3d 657, cert. denied, 314 Conn. 906, 100 A.3d 401 (2014). Thus, it was proper for the court to make the determination as to whether the contract was ambiguous. And, because that determination entails the resolution of a legal question, our review of the court's determination is plenary. See *Tobet* v. *Tobet*, 119 Conn. App. 63, 68, 986 A.2d 329 (2010). "Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . . In contrast, an agreement is ambiguous when its language is reasonably susceptible of more than one interpretation." (Internal quotation marks omitted.) *Giordano* v. *Giordano*, 127 Conn. App. 498, 503, 14 A.3d 1058 (2011).

Here, the record amply supports the court's determination that the sentence in question is subject to more than one interpretation. At trial, the plaintiffs did not deny that they were responsible for situating the pool. Indeed, they offered testimony, which the jury was entitled to credit, that they commissioned the plot plan, submitted it to the town, and gave the plot plan to the defendant to set the pool's location. The defendant, on the other hand, claimed that the plaintiffs gave it a tissue sketch from which the defendant marked by stakes the pool's dimensions and location. The defendant offered testimony, as well, that Castelli, on behalf of the plaintiffs, approved the defendant's outline of the pool's intended location. The interpretation of this sentence regarding the plaintiffs' role in directing the pool's location depended, in large measure, on the jury's assessment of this testimony. In its instructions to the jury,

the court fully and properly explained that the language is subject to multiple interpretations. We therefore conclude that there was no mistake in this instruction.

## B

As to the second sentence, containing the hold harmless and indemnification provision, the court instructed the jury to disregard it. The court stated: "The language is, you will and indemnify and hold harmless and defend [the defendant] from any claim, loss or expense, including reasonable attorney's fees, arising by reason of trespass and/or damage by [the defendant] resulting from your designation of pool location or access routes or by reason of any work by you or others.

"I instruct you that you are to disregard the language that I have just quoted. It is inapplicable to this case, and you must not consider that language in applying the contract to the facts of this case."

Later, after the jury had begun its deliberations, the jury had a question regarding the "hold harmless" language. When the jury was brought back into the courtroom, the court stated: "All right, the question is, clarification regarding what part of [the] contract were we to ignore. And then it says in parenthesis—in quotation marks—notwithstanding clause.

"What I instructed you is on page 6, I believe, of the contract; in a section captioned pool location the following language appears." The court then read the contract's indemnification and hold harmless language to the jury and concluded: "That is the language you are to ignore. It has no applicability to this case. There is the risk that you might have thought it does, and therefore that is why I specifically said it doesn't have any bearing. You are to ignore that language."

On appeal, the defendant now claims that this instruction was legally incorrect.[4] The plaintiffs, in response, and on appeal for the first time, argue that the exculpatory language in the contract violates public policy as enunciated in General Statutes § 52-572k.[5] The defendant, in turn, argues that the provisions of § 52-572k are not applicable because the plaintiffs, in this instance, make no claim for bodily injury or damage to property.

Both arguments are wide of the mark regarding the defendant's instructional claim.[6] From a cursory review of the hold harmless and indemnification language in the context of the entire agreement, it is clear that the hold harmless and indemnification language does not bear on a dispute between these parties under the contract. Rather, the language in question contemplates the potential for a complaint made against the defendant by a third party for the defendant's siting of the pool as directed by the plaintiffs, in which case, the provision calls for the homeowner to step into the shoes of the defendant to defend and hold the defendant harmless

against such a claim. In discussing the nature of an indemnification agreement generally, our Supreme Court has opined: "In Connecticut, there are cases that are instructive when determining when an action to enforce an indemnity contract accrues. The logic and rationale underlying our indemnity case law are based on the premise that an action for indemnification is one in which one party seeks reimbursement from another party for losses incurred in connection with the first party's liability to a third party." *Amoco Oil Co.* v. *Liberty Auto & Electric Co.*, 262 Conn. 142, 148, 810 A.2d 259 (2002).[7] In the context of this agreement, the record supports the reasonableness of the court's view that the indemnification and hold harmless language in this paragraph of the agreement did not relate to any potential dispute between the plaintiffs and the defendant. Accordingly, its instruction to the jury to disregard this provision was legally correct.

## II

Next, the defendant claims that the court incorrectly declined to follow the law of the case established earlier in conjunction with a hearing on the plaintiffs' application for a prejudgment remedy. The following additional facts are relevant to our consideration of this issue. By pleading dated September 29, 2010, the plaintiffs sought a prejudgment remedy against the defendant in the amount of $385,875. After a hearing, the court, *Tobin, J.*, denied the application. In doing so, the court commented, in its written memorandum of decision, that the plaintiffs had failed to adduce sufficient evidence to establish probable cause that they would succeed in either their negligence or contract claims against the defendant.[8] As to the negligence claim, the court observed that the parties had a factual dispute as to whether the plaintiffs' representative had provided a copy of the plot plan to the defendant prior to the construction of the pool, with the plaintiffs claiming that it had been given to the defendant and the defendant denying its receipt. On this score, the court found the defendant's testimony to be more credible.

As to the breach of contract claim, the court stated: "The agreement between the parties is not ambiguous. The agreement clearly and unequivocally assigned responsibility for the location of the pool to the plaintiffs." The court said, as well, concerning the contract claim: "A second, more plausible, contract theory is that the defendant breached the agreement by failing to build the pool in the location designated by the plaintiffs. There was, however, no evidence that the plaintiffs themselves gave any directions to the defendant as to the location of the pool other than to state it should be built behind their residence. In her testimony, Ms. Tomas denied ever designating or approving the location of the pool personally. She testified that she had given [Bruno] Iacono a copy of the plot plan that Tom

Quinn had prepared for the plaintiffs at her request . . . . That plot plan depicts the location of the pool as more than fifty feet from the plaintiffs' property line. In the absence of any other evidence showing that the plaintiffs or their agent(s) designated a pool location, the plaintiffs' claim of breach of contract stands or falls on the question of whether a copy of exhibit 3 was given to the defendant prior to the construction of the pool." (Citation omitted; footnote omitted.) On this point, the record is clear that Judge Tobin was unpersuaded by the plaintiffs' evidence. The court stated: "In summary, the court found Mr. Iacono to be the more credible witness with respect to the events which led to the placement of the pool.[9] The court finds that the plaintiffs have failed to establish probable cause to sustain the validity of any potential breach of contract claims against the defendant." (Footnote added.)

As to the negligence count, the court noted: "[T]he plaintiffs claim that the defendant performed its work under the contract in a manner that was not 'workmanlike' or 'in accordance with industry standards.' At the hearing, the plaintiffs produced no evidence of industry standards or from which the court could find probable cause that the defendant performed its responsibilities under the contract in an 'unworkmanlike manner.' The plaintiffs next argue that the evidence shows that the defendant was aware of the intended location of the pool and yet negligently constructed it within a required backyard setback. This assertion would require the court to accept the testimony of Ms. Tomas and disregard that of Iacono. As noted previously, the court found Iacono's testimony to be more credible. Accordingly, the court cannot find that the plaintiffs have established probable cause to sustain the validity of their negligence claims against the defendant."

From this language, the defendant asserts that Judge Tobin established, as the law of the case, that the language of the contract was clear and unambiguous, and that, in order to prevail on their negligence claim, the plaintiffs were required to adduce expert testimony regarding the standard of care for pool builders. To advance its law of the case claim, the defendant, on October 28, 2013, filed a pretrial motion in limine in which the defendant sought an order precluding the plaintiffs from introducing trial evidence that would, inter alia: "(4) show or tend to show that the written agreement between the parties is 'ambiguous'; (5) show or tend to show that [d]efendant was obligated or required under the written agreement to ensure that the pool was built in a location which conformed with the requirements of local land use regulations; (6) contradict that under the written agreement [d]efendant's responsibilities with respect to location of the pool were limited to locating the pool in accordance with [p]laintiffs' direction; (7) show or tend to show that the parties modified or agreed to modify their written

agreement . . . ." The defendant claims that, in denying this motion in limine, the court, *Povodator*, *J.*, violated the law of the case doctrine.

"As a preliminary matter, we set forth the applicable standard of review with respect to evidentiary claims. The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *Sutcliffe* v. *FleetBoston Financial Corp.*, 108 Conn. App. 799, 804–805, 950 A.2d 544 (2008).

"The law of the case doctrine provides that [w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . . A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . [O]ne judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Henderson* v. *Lagoudis*, 148 Conn. App. 330, 338–39, 85 A.3d 53 (2014). "We consider whether a court correctly applied the law of the case doctrine under an abuse of discretion standard." *Perugini* v. *Giuliano*, 148 Conn. App. 861, 879, 89 A.3d 358 (2014).

Adherence to the law of the case doctrine is not mandatory. Rather, the doctrine, when invoked, is a habit of practice impelled by prudence, comity and judicial economy. As our Supreme Court has stated: "The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . . In essence it expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power." (Citation omitted.) *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982).

Accordingly, to the extent Judge Povodator may have permitted evidence regarding the meaning of the subject contract language or may have adopted a different view of the clarity of this provision of the contract, he acted within his discretion and violated no binding tenet

of law.

III

The defendant next claims that the court incorrectly permitted the plaintiffs to introduce parol evidence as to the responsibility for placement of the pool where the contract clearly and unambiguously allocated this responsibility to the plaintiffs. Through a pretrial motion in limine dated October 28, 2013, the defendant sought an order precluding the plaintiffs from introducing any evidence or permitting any argument that would contradict or vary the terms of the written contract between the parties. Specifically, the motion refers to the provision in the contract allocating the responsibility for the location of the pool and for obtaining zoning permits to the plaintiffs. In response to this claim, the plaintiffs assert that their evidence as to the plaintiffs' and defendant's activities regarding the location of the pool was not offered to vary or contradict the terms of the contract but, rather, to demonstrate the manner in which the plaintiffs fulfilled their obligation under the contract. We agree with the plaintiffs.

"[T]he parol evidence rule is not an exclusionary rule of evidence . . . but a rule of substantive contract law . . . to which we afford plenary review." (Internal quotation marks omitted.) *Weiss* v. *Smulders*, 313 Conn. 227, 248, 96 A.3d 1175 (2014). As noted by the defendant, the parol evidence rule requires that "[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." (Internal quotation marks omitted.) *Greene* v. *Scott*, 3 Conn. App. 34, 36, 484 A.2d 474 (1984). Although we agree that the defendant has properly characterized the parol evidence rule, the record does not support the defendant's claim that testimony adduced by the plaintiffs in fact violated the rule. To the contrary, a fair reading of the record reveals that the plaintiffs offered testimony to demonstrate the manner in which they fulfilled their obligations under the contract to determine the location of the pool. As noted, the plaintiffs claimed that they had a plot plan prepared for the siting of the pool, they submitted this plan for approval to the town, and they gave a copy of the plot plan to the defendant for use in locating the pool. At trial, the defendant denied that it had been given the plot plan and claimed, rather, that it had instead been given a sketch provided by the plaintiffs' agent, Castelli, and that this sketch was used to stake out the location of the pool, which was thereafter approved by Castelli. Because the plaintiffs offered the testimony at issue in order to demonstrate the manner in which they directed the location of the pool, it cannot fairly be claimed that

this testimony was intended to vary or contradict the terms of the contract that required them to direct the pool's location.

## IV

Next, the defendant claims that the court incorrectly denied its motion for a directed verdict where the plaintiffs failed to adduce any evidence regarding the standard of care for a pool builder and where the contract contained an exculpatory provision releasing the defendant from any liability for the placement of the pool. Put differently, this claim involves two issues: (1) whether the plaintiffs should have been required to adduce testimony regarding the standard of care for pool builders; and (2) whether the defendant was entitled to a directed verdict on the basis of an exculpatory provision in the contract. We deal with each claim in turn.

We begin by setting forth the appropriate legal framework. "The standards of review for the denial of a motion for a directed verdict and denial of a motion to set aside a verdict are the same. . . . Ordinarily, [t]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . [O]ur review of a trial court's refusal to direct a verdict . . . takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial . . . giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . Directed verdicts are not favored. . . . As a general rule, the decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb. . . . We note further that, to the extent that the claims raise questions of law, our review is plenary." (Citations omitted; internal quotation marks omitted.) *Tomick* v. *United Parcel Service, Inc.*, 157 Conn. App. 312, 324–25, A.3d (2015); see also *Bridgeport Harbour Place I, LLC* v. *Ganim*, 131 Conn. App. 99, 153, 30 A.3d 703 (applying plenary review where questions of law were raised by defendant, claiming that court improperly denied motion for directed verdict and to set aside verdict), cert. granted on other grounds, 303 Conn. 904, 905, 31 A.3d 1179, 1180 (2011) (appeals withdrawn January 26 and 27, 2012). Furthermore, "[i]f contract language is definitive of the parties' intent, then the interpretation of the language becomes a question of law for the court. . . . Our review, in such a case, is plenary." (Internal quotation marks omitted.) *Watkins* v. *Watkins*, 152 Conn. App. 99, 105, 96 A.3d 1264 (2014).

A

We first review the defendant's claim that the court should have directed a verdict in favor of the defendant because the plaintiffs failed to adduce any evidence of the standard of care applicable to pool builders in order to establish the existence of the defendant's duty to the plaintiffs.

It is an elementary precept of tort law that in order to prove a case founded on negligence, a plaintiff must demonstrate that the defendant had a duty of care to the plaintiff and that the defendant breached that duty, causing injury to the plaintiff. See *Utica Mutual Ins. Co.* v. *Precision Mechanical Services, Inc.*, 122 Conn. App. 448, 454, 998 A.2d 1228, cert. denied, 298 Conn. 926, 5 A.3d 487 (2010). The scope of a party's duty is generally referred to as the standard of care. Id. When a case involves resolution of an issue of ordinary negligence, normally, expert testimony is not required to establish the applicable standard of care. Rather, the jury is to apply the standard of the reasonably prudent person in the same circumstances. See *Cammarota* v. *Guerrera*, 148 Conn. App. 743, 750, 87 A.3d 1134, cert. denied, 311 Conn. 944, 90 A.3d 975 (2014). On the other hand, expert testimony to inform a jury of the standard of care is required when the question involved goes beyond the field of knowledge and experience of ordinary fact finders. See *Ciarlelli* v. *Romeo*, 46 Conn. App. 277, 283, 699 A.2d 217, cert. denied, 243 Conn. 929, 701 A.2d 657 (1997), and cases cited therein. "The court's determination of whether expert testimony was needed to support the plaintiff's claim of negligence against the defendant was a legal determination, and, thus, our review is plenary." (Internal quotation marks omitted.) *Brye* v. *State*, 147 Conn. App. 173, 181, 81 A.3d 1198 (2013).

In the case at hand, the standard of care involved the defendant's placement of the pool and whether the defendant was negligent in situating the pool where it was constructed. As noted in this regard, the plaintiffs adduced two trains of evidence, each bearing on the question. The plaintiffs offered testimony, which the jury was entitled to credit, that the defendant was given a copy of the plot plan filed with the town and which showed the proper location for the pool. The plaintiffs also adduced testimony that the plot plan had been filed with the town and that all applicants, professionals and homeowners alike, were required to act in conformity with the terms of plot plans on file with the town in the performance of authorized work. In this regard, it is noteworthy that, in submitting an application for a building permit, the application signed by the defendant contained the following provision: "The undersigned owner or authorized agent hereby . . . (3) warrants that this building shall be located the proper distance from all street lines, side yard lines and required distances from all other zones and is located in a zone in

which this building [and] its use is allowed [and] (4) warrants that this application and all maps and location surveys submitted in connection herewith fully and accurately describe the premises and structures thereon and any conditions to approval of the same by the Wilton Planning and Zoning Commission . . . ."

At trial, the plaintiffs adduced evidence that the plot plan they had prepared and that had been approved by the Wilton Planning and Zoning Commission was made part of the plaintiffs' application file with the town. On this point, the plaintiffs alleged that the defendant's failure to follow the approved plot plan for the construction of the pool constituted a negligent failure to follow the rules and protocols generally binding on all applicants, lay people or contractors. Given the nature of those claims, we cannot find that the court mistakenly failed to require the plaintiffs to establish, through expert testimony, the standard of care for an activity required of all applicants.[10] In sum, the jury was able to determine, using common sense and ordinary wisdom, whether the defendant was negligent in not situating the pool as indicated in the plot plan given to it by the plaintiffs' agent or in not following the dictates of the plan it knew or should have known was an integral part of the town's approval. This assessment did not require specialized knowledge beyond the understanding of average jurors. On this evidence, the jury was competent to determine whether the defendant owed a duty of care to situate the pool as specified in the plot plan approved by the town and in its possession.[11]

B

The second reason the defendant claims the court should have granted a directed verdict relates to a provision in the parties' contract, which, the defendant claims, exonerates it from any liability for the wrongful placement of the pool. As noted, the parties' contract included a provision purporting to absolve the defendant from any liability for any alleged incorrect location of the pool: "You also acknowledge that you directed the location of the pool and other improvements and you shall not hold [the defendant] liable for any alleged incorrect location of the pool. You will indemnify, hold harmless and defend [the defendant] from any claim, loss or expense (including reasonable attorneys' fees) arising by reason of trespass and/or damage by [the defendant] resulting from your designation of pool location or access routes or by reason of any work by you or others." The defendant claims that, on the basis of this contract language, it was relieved of any liability for the improper placement of the pool. As discussed in part I A of this opinion, the trial court found ambiguity in that portion of the "exculpatory" provision that purported to relieve the defendant of responsibility for the improper location of the pool and, thus, its applicability was properly within the scope of the jury's fact-finding

responsibility. As to that portion of the clause containing the hold harmless and indemnification language, the record reflects that the court found those provisions inapplicable to the dispute between the parties. See part I B of this opinion. For these reasons, we find no fault with the court's determinations in this regard. For the same reasons, we believe the court correctly denied the defendant's motion for a directed verdict.[12]

## V

The defendant next claims that the court incorrectly failed to charge the jury on professional negligence and, specifically, that the plaintiffs were required to introduce evidence of the standard of care applicable to pool builders. Having already assessed this issue in response to the defendant's claim regarding the court's failure to grant a directed verdict, we need not repeat ourselves. In sum, we disagree with the defendant's claim that, in order to hold the defendant liable for negligence, the plaintiffs should have been required to adduce standard of care evidence on the ground that pool building requires specialized knowledge and abilities. Given the specific claims of this case, which are that the defendant failed to follow the plot plan given to it by the plaintiffs' agent and, in the alternative, that the defendant failed to adhere to the terms of the plot plan it knew or should have known was on file with the town, we do not find any basis for the claim that the jury was required to hear standard of care evidence to determine whether the defendant performed negligently to the plaintiffs' detriment. Because there was no need for standard of care evidence, there was no reason for a parallel charge.

## VI

The defendant's final claim is that the court should have granted a mistrial "where the trial court twice instructed the jury to correct their answers to the jury interrogatories, and where the instructions specifically told the jury what the correct answers to said interrogatories should be." We disagree.

The following additional facts are relevant to our consideration of this issue. During its final instructions and while discussing the issue of damages, the court instructed the jury that even though the plaintiffs had made both contract and negligence claims, the plaintiffs could recover only once for their losses. The court stated: "Plaintiffs cannot recover more than once for the same loss, even if they prevail on more than one cause of action. I have provided you with a verdict form and will go through it with you to make sure you understand where it appears that there is a potential for the plaintiff to recover more than once for the same loss." The court further stated: "I am submitting interrogatories, which will assist you in reaching a verdict and calculating the amount of damages, if any, to be

awarded. . . .

"The interrogatories direct you to enter final breach of contract damages and negligence damages on the plaintiffs' verdict form . . . if you conclude that [the] plaintiff is entitled to recover from [the] defendant under one or both theories.

"You will note that there is a table in the interrogatories form after the questions about breach of contract and after the questions about negligence. Ultimately, [the] plaintiffs will not be allowed to recover more than once for any given injury. I am allowing you to enter the information under one or both theories if you find that [the] plaintiffs have proven either or both theories, and if necessary, I will make appropriate adjustments to avoid a double recovery as to any claimed element of injury or damages."

The interrogatories submitted to the jury included several questions regarding liability and damages. Although the tenor of the answers clearly indicated a verdict in favor of the plaintiffs, as did the jury's use of the plaintiffs' verdict form, the jury's answers revealed, as well, certain inconsistencies. When the jury first indicated that a verdict had been reached and the verdict and interrogatory forms had been given to the court, the court responded: "All right, there is a problem with these forms. What you apparently did is divide it by two and put it in twice on the third form."[13] To this comment, the jury foreperson responded: "Yes." The court responded: "That is not the proper way to do it. You need—if in fact your verdict is for that full amount, put it in twice. I will make sure that there is no duplication." The jury foreperson then said: "Okay. We can do that, Your Honor."

The jury then returned to the jury room until, once again, the court was notified that the jury had a verdict. When the jury returned for the second time, and once the verdict and interrogatory forms were handed to the court, another discrepancy was discovered by the court, this one involving one of the interrogatories in which the jury had marked a box with an "X" indicating that the language in the contract purporting to absolve the defendant of liability for the placement of the pool would relieve the contractor of legal responsibility. The court stated: "There is a problem. Ladies and gentlemen, I'm sorry, but there is a problem. There is an inconsistency between—in what you've done. It could be that you misunderstood the form, but there is a problem in that you indicated that errors in the location that were the fault of the contractor would relieve the contractor of responsibility. And, you are finding against the contractor. So, that is inconsistent.

"I don't think we have time to send you back today to correct this. I can't talk to you individually. You are saying that it relieves—you've checked the box saying

that the contract excuses the contractor if he makes a mistake. And yet you are finding against the contractor.

"That is the problem. If you can handle this—I will give it back to you one more time. If you think you can do this in, like, two minutes, there is a correction that needs to be made that you think you can make.

"What you've done is, you've checked the box. Again, do you understand what I am saying?" The record reflects that the jury answered: "Yes," and when a juror then began to ask: "Would a corrected form—" the court stated: "I can't talk to you. All I am saying is, as long as you understand what my problem is. If you think you can correct it quickly, it can be corrected. Otherwise, we are going to have to come back on Tuesday." The jury thereafter returned to the jury room.

At that juncture, counsel for the defendant moved for a mistrial, claiming that the court had polluted the jury, that its comments to the jury had been unfair and prejudicial. The court denied the motion, noting that "we don't even have a verdict yet." Shortly thereafter, the jury returned with a verdict. On the interrogatory form that previously the jury had marked an "X" indicating that the defendant would not be legally liable for errors in location of the pool that were its fault, the jury now had crossed out the "X" marking with the consequence that the answer to this interrogatory became consistent with the damage award, and with its other findings regarding the defendant's negligence and breach of contract. The court thereafter accepted the jury's verdict.

On appeal, our review of a court's denial of a motion for a mistrial focuses on whether the court abused its discretion. As this court has stated: "The standard for review of an action upon a motion for a mistrial is well established. While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . In [our] review of the denial of a motion for mistrial, [we recognize] the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion. . . . In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors. . . . Therefore, [i]n those cases

in which an abuse of discretion is manifest or where injustice appears to have been done, reversal is required." (Internal quotation marks omitted.) *State* v. *Holloway*, 116 Conn. App. 818, 829–30, 977 A.2d 750, cert. denied, 294 Conn. 902, 982 A.2d 646 (2009).

In the case at hand, we find no abuse of discretion. The court returned the jury to deliberations twice, each time because the jury had patently made a mistake. In the first instance, the jury had answered the interrogatories in a manner consistent with the court's instructions by twice setting forth its award of damages, broken into component parts, as resulting from the defendant's breach of contract and also as flowing from the defendant's negligence. In instructing the jury, the court had counseled the jury that in the event of a plaintiff's verdict, it should not be concerned with duplication of damages, as the court promised it would ensure that there was not a double award. Thus, the jury's completion of the interrogatories was consistent with the court's instructions. As noted by the court, however, the jury incorrectly filled out the plaintiffs' verdict form by dividing the total damages in half, attributing an equal part each to the defendant's negligence and to the defendant's breach of contract. In sending the jury back, the court merely pointed out this inconsistency. The court's response to the inconsistency between the jury's treatment of damages in the interrogatories and its completion of the plaintiffs' verdict form was appropriate.

Furthermore, as noted by this court in *Szczycinska* v. *Acampora*, 125 Conn. App. 474, 483–84, 10 A.3d 531 (2010), "[p]ursuant to General Statutes § 52-223, [t]he court may, if it judges the jury has mistaken the evidence in the action and has brought in a verdict contrary to the evidence, or has brought in a verdict contrary to the direction of the court in a matter of law, return them to a second consideration, and for the same reason may return them to a third consideration. The jury shall not be returned for further consideration after a third consideration. See also Practice Book § 16-17. This statute [formerly General Statutes § 1104] does not limit the power of the trial court to return the jury to a second or third consideration, to cases in which the verdict is, in the opinion of the court, in favor of or against a wrong party. A verdict in other respects correct may be contrary to the evidence, or to the direction of the court in a matter of law, because [it is] for too large or too small a sum, and the provisions of this section are applicable to such cases. . . .

"While the remarks of the court to the jury in so returning [it], either regarding the evidence or regarding matters of law, are subject to review on appeal as a part of the charge . . . the power given by the statute to the court to so return the jury is largely a discretionary one, the reasonable exercise of which, in the

absence of erroneous instructions to the jury in returning [it], will not be reviewed by this court, especially when it appears that the verdict finally accepted is not, by reason of the change made, contrary to the law or the evidence." (Citation omitted; internal quotation marks omitted.) In a similar vein, this court has said: "[T]he [trial] court plays an essential role in supervising the jury and in ensuring that the verdict is reasonable and lawful. . . . The control of the court over the verdict of the jury is limited but salutary." (Citation omitted; internal quotation marks omitted.) *Pickering* v. *Rankin-Carle*, 103 Conn. App. 11, 18, 926 A.2d 1065 (2007).

Here, the record reveals that the court reasonably acted within its authority. When the jury first returned with a verdict, the court observed that the jury had found in favor of the plaintiffs but, in completing the verdict form, had failed to follow the court's instructions permitting the jury to award the totality of damages for the defendant's breach of contract and for the defendant's negligence. The court's response to the jury was explanatory and in accord with the law. Similarly, when the jury returned with a corrected plaintiffs' verdict form, the court discovered, in reviewing the jury's answers to the interrogatories, that one of the answers was legally inconsistent with a verdict for the plaintiffs and inconsistent with all of the other answers to the interrogatories propounded to the jury.[14]

A fair reading of the record reveals that each time the court declined to accept the jury's verdict and, instead, returned the jury to the jury deliberation room, the court did not dictate the outcome of the jury's further deliberations but, rather, pointed out the inconsistencies in the jury's verdict and interrogatory answers, respectively, informing the jury that the verdict amounts and interrogatory answers needed to be consistent with one another and that the amount of the verdict should be calculated in accordance with the court's earlier instructions. In doing so, the court acted in a manner consistent with General Statutes § 52-223 and its corresponding Practice Book provision, § 16-17.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The complaint, when originally filed, contained seven counts alleging: (1) breach of contract; (2) breach of warranty; (3) negligence; (4) innocent misrepresentation; (5) breach of the duty of good faith and fair dealing; and (7) a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. On the eve of trial, the plaintiffs withdrew all but the breach of contract and negligence counts.

[2] Whether the tissue sketch was actually given to the defendant and whether, if so, it provided a reasonable basis for the defendant to situate the pool were significantly contested issues at trial. The defendant claimed that in reliance on the sketch, it placed stakes to show the intended location of the pool and that Castelli, on behalf of the plaintiffs, approved the proposed location. The plaintiffs, on the other hand, claimed that the sketch was not given to the defendant and, at any rate, that it was only a rough sketch that included no dimensions or specific designation for the pool's location.

[3] This testimony was contested by the defendant, thereby setting up a

core factual dispute for the jury's determination.

[4] After the court answered the jury question in this manner, the only issue raised by the defendant was that the jury might have confused the court's instruction to ignore the language of the indemnification and hold harmless sentence with the provision of the previous sentence regarding responsibility for the placement of the pool. Nevertheless, because the defendant had filed a written request to charge on the subject of the "exculpatory" paragraph of the agreement, we review this claim on appeal. See *State* v. *Johnson*, 316 Conn. 45, 54, 111 A.3d 436 (2015) ("[w]e never have required . . . a defendant who has submitted a request to charge also to take an exception to a contrary charge, and such a requirement would contravene the plain language of [Practice Book § 42-16]" [internal quotation marks omitted]).

[5] General Statutes § 52-572k provides in relevant part: "(a) Any covenant, promise, agreement or understanding entered into in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of any building, structure or appurtenances thereto including moving, demolition and excavating connected therewith, that purports to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of such promisee, such promisee's agents or employees, is against public policy and void, provided this section shall not affect the validity of any insurance contract, workers' compensation agreement or other agreement issued by a licensed insurer. . . ."

[6] Because neither party asked the court to articulate the basis on which the court charged this particular provision out of the case, we look to the record to determine if there was a reasonable basis for the court's action.

[7] In their brief, the plaintiffs asserted that the court found the language of the indemnification clause to be ambiguous. It did not. In its instructions to the jury, the court carefully separated the first and second sentences of this paragraph. The record plainly reveals that the court instructed the jury that the language of the first sentence regarding the direction of the location of the pool is ambiguous. The court made no such finding and it gave no such instruction regarding the indemnification and hold harmless provision.

[8] In conjunction with their application for a prejudgment remedy, the plaintiffs attached a proposed multicount complaint. At the hearing, however, the court found that the plaintiffs had adduced evidence in support of only their breach of contract and negligence claims.

[9] The record reflects that Iacono is a principal of the defendant corporation.

[10] Notably, the plaintiffs made no claims at trial that the defendant was negligent in the manner of construction of the pool. That is, the defendant's expertise as a pool builder, if that is an area of expertise, was not called into question at trial.

[11] As noted previously, whether the plot plan was actually given to the defendant by Castelli was a core disputed issue at trial. The jury, of course, was entitled to credit evidence that the defendant was in possession of the plot plan.

[12] In response to this claim, the plaintiffs assert that the court correctly denied the defendant's motion for a directed verdict concerning the exculpatory language because application of such language to these facts would have violated § 52-572k. The defendant responds that the provisions of § 52-572k are inapplicable to the facts at hand because the statute voids indemnification and hold harmless provisions only when applied to claims for bodily injury or property damages, claims absent from this litigation. We do not need to assess the reach of § 52-572k in this appeal because we agree with the trial court's determination that its provisions are not applicable to this dispute between the contracting parties. See part I B of this opinion.

[13] Our review of the record reveals that on page 3 of the interrogatory form, the jury entered the amount of $62,142.86 as damages due to the defendant's breach of contract. On page 5 of the interrogatory form, where the jury was asked to indicate an award for damages based on the defendant's negligence, the jury indicated: "See page 3." A fair reading of these answers is that the jury arrived at an award of $62,142.86 for the defendant's breach of contract and a like amount for the defendant's negligence. On the plaintiffs' verdict form, however, the jury indicated an award of $31,071.43 for the defendant's breach of contract and the same amount for the defendant's negligence, amounts exactly half the total damages it assessed.

[14] A review of the interrogatory answers reveals, as well, that all of the other answers were consistent with the jury's verdict. As to the contract

claims, the jury found that the "exculpatory" language did not relieve the defendant of its legal responsibility regarding the location of the pool and that the installation of the pool at a location that violated the town zoning regulations was the defendant's fault. The jury found that the plaintiffs established that the defendant breached the contract by improperly locating the pool and that the plaintiffs substantially performed all of their obligations under the contract. The jury found that the plaintiffs suffered economic damages resulting from the defendant's breach of contract in the total amount of $62,142.86. As to the negligence claim, the jury found that the plaintiffs proved that the defendant negligently installed the pool in a location that violated the town's zoning regulations and that this negligence was the proximate cause of the economic damages suffered by the plaintiffs. In the blank space provided for the jury to indicate the amount of the damages caused by the defendant's negligence, the jury simply referred to its calculation for contract damages.

---